R. Rex Parris (SBN 96567)
　　rrparris@rrexparris.com
Alexander R. Wheeler (SBN 239541)
　　awheeler@rrexparris.com
Kitty Szeto (SBN 258136)
　　kszeto@rrexparris.com
**R. REX PARRIS LAW FIRM**
42220 10th Street West, Suite 109
Lancaster, California 93534
Telephone (661) 949-2595
Facsimile (661) 949-7524

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK JIMENEZ; individually, and on behalf of other members of the general public similarly situated; <br><br>         Plaintiff, <br><br>     vs. <br><br> ALLSTATE INSURANCE COMPANY, an Illinois Corporation; and DOES 1 through 100, inclusive. <br><br>         Defendants, | Case No.: CIV10-8486 JAK (FFMx) <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> [Filed Along With Declaration of Alexander R. Wheeler and Plaintiff's Evidentiary Objections to Defendant's Witness Declarations] <br><br> Date:    December 12, 2011 <br> Time:    8:30 a.m. <br> Place:   Courtroom 750 <br> Judge:  Hon. John A. Kronstadt <br><br> Complaint Filed:  September 29, 2010 |

---

1
2

# TABLE OF CONTENTS

PAGE

Summary of Reply ....................................................................................... 1

The Evidence .............................................................................................. 2

Plaintiff's Evidence ................................................................................. 2

Deposition Testimony of Plaintiff's Declarants Support Class Certification ................... 4

Allstate's Current Employee Declarations ................................................ 6

Deposition Testimony of Allstate's Own Declarants

   Also Supports Class Certification ............................................................. 8

ARGUMENT ............................................................................................. 16

1.  WAL-MART STORES, INC. V. DUKES IS DISTINGUISHABLE ON

     BOTH THE FACTS AND THE LAW. .......................................................... 16

2.  COURTS FREQUENTLY CERTIFY NON-EXEMPT EMPLOYEE

     UNPAID OVERTIME ("OFF-THE-CLOCK") AND MEAL AND REST BREAK CASES. .... 19

3.  PLAINTIFF MET HIS RULE 23 BURDENS. ................................................. 21

   A.  Plaintiff has Identified – and Supported with Substantial Evidence –

      the Existence of Common Questions that Apply to all

      California Claims Adjuster Class Members. ..................................... 21

   B.  Common Questions Predominate Across the Entire Proposed Class. ............... 22

   C.  Plaintiff's Claims are Typical to those of his

      Fellow Allstate Claims Adjusters. ................................................. 23

   D.  Plaintiff's Class Claims are Superior and his Trial Methodology

      Plain is Unaffected by *Dukes*. ...................................................... 23

Conclusion ................................................................................................. 25

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Arrendondo v. Delano Farms Co.*, Case No. CV F 09–1247 LJO DLB,

   2011 WL 1486612, *17 (E.D. Cal. April 19, 2011) ...................................... 24

*Jaimez v. DAIOHS USA, Inc.*, 181 Cal.App.4th 1286, 1301 (2010) .................................. 6

*Jensen v. Eveleth Taconite Co.* (D. Minn. 1991) 139 F.R.D. 657 ...................................... 7

*Mahoney v. Farmers Ins. Exch.*, 2001 WL 4458513, Case No. CV-2327

   (S.D. Tex. Sept. 23, 2011) ................................................................... 19, 24

*Morden v. T-Mobile U.S.A., Inc.* (W.D. Wash. 2006) 2006 WL 2620320 ......................... 7

*Reed v. County of Orange*, 266 F.R.D. 446 (C.D. Cal. 2010) ........................................ 20

*Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) ........................................... 23

*Sav-on Drug Stores v. Super. Ct.*, 34 Cal.4th 319, 329 (2004) ...................................... 3

*Ugas v. H&R Block Enters., LLC,* 2011 WL 3439219,

   Case No. CV 09-6510-CAS (SHx) (C.D. Cal. Aug. 4, 2011) ................................. 20, 24

*United Steel v. ConocoPhillips Co.*, 593 F.3d 802 .................................................. 3

*Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D. Cal. 2010) .......................... 20, 23

PLAINTIFF'S REPLY ISO MOTION FOR CLASS CERTIFICATION

1

## SUMMARY OF REPLY

2

"***Overtime is cancelled!  Effective Immediately***."[1]

3

That was the subject line of an e-mail that an Allstate supervisor sent to

4

some non-exempt, hourly-paid potential class member Allstate Claims Adjusters.

5

Specifically, these class members were told ***"[n]o overtime and no exceptions!"***[2]

6

Allstate knew about this smoking-gun e-mail before its opposition deadline – one

7

of Plaintiff's declarants produced it at her deposition.  But, Allstate failed to

8

submit any evidence (for example, a declaration from the sender of the e-mail) to

9

either explain or rebut the e-mail's significance.  This unambiguous,

10

uncontroverted and stern "no-overtime" directive is hardly surprising given the

11

evidence Plaintiff has amassed detailing Allstate's pervasive corporate culture that

12

encourages unreported Claims Adjuster overtime.

13

Plaintiff has provided substantial evidence to support his motion for class

14

certification.  Unlike Allstate, Plaintiff had no internal access to, or economic

15

influence over, the large pool of Allstate's current and former employees, but

16

submitted 7 declarations to support his motion and substantiate his claims.

17

Allstate's head of California claims testified that "timekeeping" methods and

18

overtime pre-approval policies and practices are identical and uniformly applied

19

across all potential class members.  Plaintiff's declarations detail Allstate's

20

widespread wage-and-hour violations.  Specifically, Plaintiff and the supporting

21

declarants testified that these uniform Allstate policies and practices, and the

22

massive Claims Adjuster workload, resulted in their working extensive unreported

23

overtime.  Plaintiff and the supporting declarants also testified about meal and rest

24

period and wage-statement violations.

25

26

[1]     Exhibit "2" to Deposition of Kathleen Ray (attached as Exhibit "A" to the
Declaration of Alexander R. Wheeler ("Wheeler Decl." filed concurrently

27

herewith).

28

[2]     *Id.*

1

Allstate attempts to have the merits of this case determined at the certification stage based entirely upon its current employee declarations.  Notably, Allstate did not submit *any* former employee declarations.  More egregiously, Allstate submitted declarations that it had obtained from its employees regarding a completely separate class action against it and filed them in this case without the declarants' consent.  The declarants' testimony differed markedly from their attorney-drafted declarations.  Plaintiff deposed over half of Allstate's declarants, many of whom confirmed Plaintiff's allegations.  Allstate's own witnesses demonstrate that Plaintiff's theory of recovery is amenable to class certification.

The overarching common question ideal for adjudication on a class-wide basis is whether the Claims Adjusters worked unreported overtime and whether Allstate knew *or should have known* about its employees' work.  Plaintiff's meal and rest period claims involve similar common questions about whether Allstate provided legally-compliant breaks.  Plaintiff has shown by a preponderance of the evidence that common questions of law and fact predominate and that the class action mechanism is the superior method to adjudicate Plaintiff's off-the-clock claims.

## THE EVIDENCE

### Plaintiff's Evidence

Plaintiff moves to certify a class of all Claims Adjusters that worked for Allstate in California during the Class Period.  Plaintiff provided extensive evidence in his moving papers that Allstate's labor policies are uniform and standardized as applied to this defined, finite group of Allstate employees. [Motion at pp. 2-10]  Since the 2005 reclassification, all California Claims Adjusters are uniformly paid a *de facto* salary for working the standard, 8-hour days and 40-hour weeks.  [*Id.* at pp. 4-7]  Allstate did not, after the reclassification, make any timekeeping changes to ensure that the now-hourly

adjusters would record their time properly and be paid for *all* time they spend working.  [*Id.*]  In fact, Allstate *prevents* its Claims Adjusters from keeping track of their own hours and prevents them from reporting their own overtime hours. Instead, the Claims Adjusters' managers must pre-approve and then input their time for them.  [*Id.*]  Allstate's head of California claims and several Frontline Performance Leaders testified that the company's "timekeeping" methods and overtime pre-approval policies and practices are applied ***uniformly*** across all potential class member employees.  [*Id.*]  These uniform and standardized labor policies and practices applicable to Plaintiff's class definition are, standing alone, sufficient evidence to support certification.  *See United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 807-08 (9th Cir. 2009) (reversing denial of class certification as to meal break claims); *accord Sav-on Drug Stores v. Super. Ct.*, 34 Cal.4th 319, 329 (2004) (questions of commonality and predominance assessed based on plaintiff's theory of the case).

In addition to the undisputed uniformity of Allstate's labor practices, Plaintiff submitted declarations from seven (7) potential class members other than himself, all of whom testified as to Allstate's policy and practice of requiring them to work without being paid.  [*Id.* at pp. 3-8]  This is not an isolated problem – these 7 declarants (other than Plaintiff) worked in different Market Claims Offices for different Frontline Performance Leaders.  They all testified as to Allstate's policy and/or practice to require them, and other Claims Adjusters, to work unreported overtime.

Plaintiff's declarations are from former Allstate employees that, unlike Allstate's current employee declarants, do not have any significant economic interest to testify as to anything but the truth.  Plaintiff's ability to assemble this number of Allstate employees willing to support and corroborate his claims is significant.  For example, in *Parris v. Lowe's HIW, Inc.*, the court of appeal ordered certification based in large part upon plaintiff's proffer of seventeen (17)

3

declarations in a class consisting of over 25,000 employees.  2007 WL 2165375 (2007).  By contrast, the potential class size in this case (based upon Allstate's records) is roughly 1,300.  Allstate attempts to counter Plaintiff's substantial evidence by arguing that it has presented 26 declarations that "disprove" Plaintiff's declarations, only 18 of which are from potential class members (the rest are from management-level employees).  Moreover, unlike Allstate, Plaintiff does not have unfettered access to – and significant relationships with – Allstate's vast pool of current and former employees.  Indeed, the fact that ***Allstate did not submit a single declaration from a former employee*** – the only truly disinterred witnesses over whom Allstate has no control – offers a strong presumption that it could not find any willing to testify about the arguments Allstate makes in its opposition.

Instead, Allstate submits declarations from biased and veteran[3] Allstate employees.  These desperate attempts only highlight Allstate's failure to confront and address its former employees' testimony about its illegal labor policies and practices.

## Deposition Testimony of Plaintiff's Declarants Support Class Certification

Plaintiff's Declarants confirmed that their workload remained the same after the 2005 reclassification, that they were unable to complete their assigned tasks within an eight hour workday, and that all Adjusters worked unreported overtime hours.[4]  If anything, Claims Adjusters were required to perform more work than they had performed before the reclassification over the course of a shorter and

---

[3]     Diego Depo. at 25:14-24; Elliott 97:18-20; Gehl 62:24-63:17; Keller Depo. at 14:1-3; Wilson 21:3-5

[4]     Beck Depo. at 32:11-15; Hall Depo. at 45:24-46:17; Ray Depo. at 109:5-20, 113:7-22; Vargas Depo. at 75:3-12;  Rubinoff Depo. at 51:22-52:6, 52:16-53:9, 58:17-59:3, 162:4-162:16.

4

restricted time period – an eight hour day.[5]  This continued despite Claims Adjusters' complaints.[6]

After the January 2005 reclassification, Claims Adjusters' time was strictly scrutinized by Allstate's management.  Allstate made it clear that Claims Adjusters were expected to complete their daily scheduled tasks within eight hours.[7]  However, this was a sheer impossibility.[8]  Adjusters testified that, "[i]t's physically literally impossible for us to do what they want us to do in eight hours."[9]  Meal and rest periods were sacrificed in order to complete tasks on time.[10]  When work remained to be done at the end of a scheduled eight hour shift, Claims Adjusters would "stay and work."[11]

All of Plaintiff's declarants worked anywhere from five to twenty hours of overtime each week in order to complete their assigned tasks.[12]  Plaintiff's Declarants had several conversations amongst their colleagues about other Claims Adjusters staying 3 to 4 hours past their daily scheduled shifts in order to complete

---

[5]      Beck Depo. at 70:6-13; Hall Depo. at 100:5-23.

[6]      Beck Depo. at 50:7-14; *see also* Hall Depo. at 32:19-33:8.

[7]      Beck Depo. at 82:13-16; Hall Depo. at 32:19-33:8; Vargas Depo. at 38:3-18.

[8]      Beck Depo. at 94:1-6; Hall Depo. at 45:11-17, 111:1-5; Saunders Depo. at 32:16-25; Ray Depo. 94:7-18, 127:5-15; Vargas Depo. at 74:20-75:1; Rubinoff Depo. at 109:20-24, 163:10-15.

[9]      Beck Depo. at 50:14-16.

[10]      Beck Depo. at 55:2-56:15, 57:8-11; 59:3-7; Saunders Depo. at 67:12-21; Vargas Depo. at 56:19-21.

[11]      Beck Depo. at 79:5-20; Rubinoff Depo. at 82:18-83:14; Rubinoff Depo. at 60:9-18.

[12]      Beck Depo. at 47:3-14; Hall Depo. at 97:12-19, 104:8-10; Saunders Depo. at 109:5-20; Rubinoff Depo. at 101:6-102:1; Ray Depo. at 57:9-20; Vargas Depo. at 45:6-18, 63:2-19, 68:22-69:14.

5

their assigned workload.[13]  This overtime work was deliberately and consistently "overlooked" by management.[14]

Plaintiff's Declarants would forego their meal and rest periods in order to complete work overloads more efficiently.[15]  Some Claims Adjusters would never take lunch periods, work straight through their day, and still had to work overtime to complete their assigned tasks.[16]  Several Claims Adjusters complained about the unmanageable workload during unit meetings, but Allstate failed to implement any changes to compensate Adjusters on a regular basis for the overtime hours they worked.[17]

**Allstate's _Current_ Employee Declarations**

Each of the twenty-six (26) declarations (which include many manager declarations) Allstate submits in its Opposition are from its **_current employees_**, many of whom are management.  Allstate has access to _several hundred_ of its disinterested, former employees, but did not provide a single one to testify in support of its class certification opposition arguments.  Importantly, the fact that the defendant employer has persuaded some of its current employees to submit declarations in opposition to class certification does _not_ weigh against class action treatment.  _See Jaimez v. DAIOHS USA, Inc._, 181 Cal.App.4th 1286, 1301 (2010). Accordingly, courts often discount heavily testimony offered by current

---

[13]   Beck Depo. at 48:18-49:6; Hall Depo. at 81:23-82:8.

[14]   Beck Depo. at 48:18-49:6; _see also_ Hall Depo. at 102:13-19, 107:23-108:23; Rubinoff Depo. at 87:25-88:25, 90:17-91:22, 92:9-93:11.

[15]   Beck Depo. at 55:2-56:15, 57:8-11; 59:3-7; Vargas Depo. at 56:19-21, 57:6-58:6; Hall Depo. at 78:4-79:6; Saunders Depo. at 66:1-11; Ray Depo. at 82:17-83:13, 86:10-20.

[16]   Beck Depo. at 55:2-56:15.

[17]   Beck Depo. at 81:8-18; Hall Depo. at 52:17-21, 53:7-25.

employees in opposition to certification motions "because of the risk of bias and coercion inherent in that testimony."  *Morden v. T-Mobile U.S.A., Inc.* (W.D. Wash. 2006) 2006 WL 2620320, *3; *see also Jensen v. Eveleth Taconite Co.* (D. Minn. 1991) 139 F.R.D. 657, 664.

Moreover, seven (7) of the declarations Allstate submits were signed and dated *before* this lawsuit was even filed,[18] five (5) of which were submitted in support of Allstate in a wholly separate class action (*Williams v. Allstate*).[19]  Some of the *Williams* declarants testified at their deposition that they never gave Allstate permission to use their declaration in this case.[20]  Notably, at the June 17, 2011 Status Conference, Allstate represented to the Court that "[w]e have not obtained declarations yet, Your Honor."[21]  Yet, the *Williams* declarations, which were obtained prior to the June 17, 2011 Status Conference, were filed in support of Allstate's opposition.  Based on Allstate's representations in open court, these irrelevant declarations should be completely disregarded.  Plaintiff will move to strike these seven (7) declarations prior to the class certification hearing set for December 12, 2011.

Allstate cherry-picked only those current employees from whom it could obtain favorable testimony.  Faced with these biased, boilerplate, and conclusory declarations, Plaintiff deposed 15 of the 26 declarants.  Not surprisingly, when subject to cross examination and live questioning, these declarants' deposition

---

[18]     Declarations of Salvador Diego and Matt Wilson; Diego Depo. at 6:8-19, 38:20-39:14, 39:18-20.

[19]     Declarations of Cheryl Wilson, Ryan Huskey, Lori Hansen, Elissa Predmore, and Harley Thompson.

[20]     Diego Depo. at 6:8-19, 38:20-39:14, 39:18-201, 48:4-17, 149:2-151:14; Predmore Depo at. 105:11-22; Wilson Depo. at 35:3-17, 38:8-12, 51:4-11, 53:11-16, 56:22-24, 58:10-16.

[21]     June 17, 2011 Hearing Transcript at 8:18-20 (Exhibit "B" to Wheeler Decl.).

7

testimony differed substantially from their attorney-drafted declarations.  Indeed, these depositions of Allstate's own witnesses make clear that the issues in this case are ideal for class-wide adjudication.

## Deposition Testimony of Allstate's *Own* Declarants Also Supports Class Certification

Each of Allstate's declarations were drafted solely by its litigation attorneys – using the attorneys' words, not the declarants'.[22]  Some of the declarants were never told how their declarations were going to be used or that they were going to be used to defend Allstate in this case.[23]  Many of the declarants had no idea what this lawsuit was even about or why they had to sign the declaration.[24]  Some were never even told that they were potential class members in this case.[25]  Nor were

---

[22]     Abich Depo. at 49:17-18; Diego Depo. 132:20-23, 133:13-134:15, 135:2-10, 140:4-9, 140:12-17; Gehl Depo. at 58:23-59:5; Keller Depo. at 84:4-6, 84:11-22; Lohr Depo. at 103:20-22, 113:10-17; Lynch Depo. at 140:8-11; Oseguera Depo. at 55:24-56:1; Perry Depo. at 106:16-107:5, 114:16-21, 115:24-116:1; Predmore Depo. at 102:5-9, 54:17-55:5; Tomasello Depo. at 78:4-12; Wilson Depo. at 117:18-118:3.

[23]     Bedard Depo. at 77:20-22; Diego Depo. at 6:8-19, 38:20-39:14, 39:18-20, 148:4-17, 149:2-151:14; Lynch Depo. at 24:21-23, 30:11-13; Mueller Depo at. 39:7-9; Oseguera Depo. at 68:15-22, 72:6-10; Perry 117:7-16; Predmore Depo. at 36:2-4, 52:17-23.

[24]     Abich Depo. at 25:6-11; Gehl Depo. at 22:3-6, 22:14-17, 23:2-6, 67:14-16; Lohr Depo. at 14:3-17, 31:14-21, 32:8-19, 45:12-20, 109:22-110:4; Oseguera Depo. at 18:1-3, 50:15-17, 53:11-15, 54:7-13, 54:24-55:17, 62:6-10; Newman Depo. at 19:4-8; Perry Depo. at 93:23-94:7, 100:24-101:5, 101:9-13, 116:21-25; Tomasello Depo. at 83:1-3.

[25]     Bedard Depo. at 50:17-21; Oseguera Depo. at 75:16-22; Predmore Depo. at 34:19-23, 35:2-15.

---

they adequately informed of their rights when signing the declaration.[26]  These declarants were not "volunteers."[27]  They were simply hand-picked by Allstate and were instructed to go speak with Allstate's attorneys as part of their job.[28]  Declarant Millie Abich testified that she never gave permission for her FPL to give out her name to be interviewed by Allstate's attorneys.[29]  Some of the declarants spent five (5) minutes or less reviewing their multi-page declaration before signing it.[30]  Declarant Willem Lohr testified that he felt pressured to sign a declaration because everyone else was doing it.[31]  Declarant Harry Newman testified that he signed the declaration because it was part of his duties as a current employee for Allstate.[32]  Other declarants did not even verify whether the facts contained in their declarations were accurate.[33]  Some of the declarants left errors and mistruths in their declarations and did not even bother to ask that these errors be fixed prior to signing them under penalty of perjury.[34]  In some instances,

---

[26]     Abich Depo. at 165:3-168:8, 169:19-23, 170:10-12; Perry Depo. at 99:24-100:10, 104:24-105:1, 105:8-11; 117:1-6, Predmore Depo. at 44:17-24, 45:9-12.

[27]     Diego Depo. at 108:25-109:8; Perry Depo. at 101:19-102:1, 103:23-104:6, 105:12-20, 114:22-115:2, 115:12-116:1.

[28]     Abich Depo. at 23:2-4, 24:13-25, 162:3-13; Newman Depo. at 18:10-19:3; Mueller Depo. at 76:25-77:6; 78:3-10; Perry Depo. at 117:10-16, 154:3-6; Tomasello Depo. at 72:1-7.

[29]     Abich Depo. at 25:15-18.

[30]     Bedard Depo. at 75:1-4; Newman Depo. at 41:14-17; Perry Depo. at 108:1-12, 113:7-8.

[31]     Lohr Depo. at 111:11-23.

[32]     Newman Depo. at 43:22-44:12 ("I did my duty, okay.  I did what I was told to do.")

[33]     Bedard Depo. at 43:19-21; Wilson Depo. at 77:4-8; Elliott Depo. at 143:22-145:24; Predmore Depo. at 103:2-23.

[34]     Abich Depo. at 147:23-149:11; Gehl Depo. at 59:6-61:3; Lohr Depo. at 99:2-16, 109:16-21.

9

---

Allstate did not even obtain the declarants' permission or consent to use their declaration in this case.[35]

Allstate also "interviewed" some employees that did not end up submitting declarations, demonstrating that Allstate did not like what many of its current employees had to say about its labor policies and practices.[36]

While Allstate expects its Claims Adjusters to complete their job within eight (8) hours, Allstate's declarants confirmed that the Claims Adjusters' jobs cannot be completed within an eight (8) hour day because their workload remained the same before and after the 2005 reclassification, despite the various "Workload Balance Measures" Allstate allegedly put in place.[37]   Declarant Stacy Keller, a Frontline Performance Leader at the Diamond Bar Market Claims Office even testified that the workload became heavier after the reclassification.[38]   She stated that the Claims Adjuster job is "neverending."[39]   There is no dispute that the Allstate's declarants routinely work overtime in order to get their job done.[40]

---

[35]    Diego Depo. at 6:8-19, 38:20-39:14, 39:18-20, 148:4-17, 149:2-151:14; Oseguera Depo. at 62:13-22, 71:6-9; Predmore Depo. at 105:11-22; Wilson Depo. at 35:3-17, 38:8-12, 51:4-11, 53:11-16, 56:22-24, 58:10-16.

[36]    Abich Depo. at 21:12-22:25; Gehl Depo. at 30:9-31:7; Keller Depo. at 74:23-75:10, 76:11-21; Perry Depo. at 86:23-87:3, 88:19-21, 90:2-5, 91:25-92:3; Tomasello Depo. at 67:10-68:2

[37]    Diego Depo. at 29:11-18, 30:5-14, 153:7-9; Keller Depo. at 44:7-13; Newman Depo. at 65:14-23; Perry 19:16-20:8, 22:15-23:14, 29:11-15, 43:19-44:3, 45:1-47:10, 64:17-20, 64:24-66:8, 123:13-20, 124:11-16, 125:4-25, 126:9-22, 127:17-25, 131:18-132:2; Tomasello Depo. at 34:18-23, 43:19-44:13; Wilson Depo. at 170:1-7; *See* Gehl Depo. at 122:17-123:5.

[38]    Keller Depo. at 93:22-94:8

[39]    Keller Depo. at 44:24-45:13

[40]    Abich Depo. at 76:5-12; Oseguera Depo. at 128:6-8, 128:25-129:4; Predmore Depo. at 58:3-5.

---

Nor are they permitted to ask their FPLs to reduce their workload.[41]  Allstate expects its Claims Adjusters to close as many claims as quick as possible, within zero to seven days.[42]  Because customer service is a priority for Allstate, the Claims Adjusters are required to work overtime by staying on the phone with a customer even if it is past the end of their scheduled shift.[43]

Many of Allstate's declarants overwhelmingly confirmed that the timekeeping policies, the overtime policies, and the meal and rest break policies applied **_uniformly_** to all Claims Adjusters throughout California.[44]  Allstate does not require its hourly Claims Adjusters to clock in and out every work day and does not keep track of their actual hours worked.[45]  Allstate did not, after the reclassification, conduct any training to ensure that the now-hourly adjusters would record their time properly and be paid for _all_ time they spend working.[46]  Instead, Allstate assumes that its Claims Adjusters only work eight (8) hours per day or forty (40) hours per week.[47]  Nor does Allstate require its Claims Adjusters

---

[41]     Abich Depo. at 127:3-6.

[42]     Abich Depo. at 131:4-22; Perry Depo. at 127:2-8.

[43]     Oseguera Depo. at 120:19-24.

[44]     Diego Depo. at 22:9-12, 62:2-67:15, 77:19-78:2; 139:12-15, 169:5-10; Keller Depo. at 39:20-24, 53:25-54:11, 103:1-104:21; Oseguera Depo. at 108:12-24; Newman Depo. at 75:24-76:13; Tomasello Depo. at 102:1-8; Wilson Depo. at 78:2-22.

[45]     Abich Depo. at 86:7-17, 95:20-96:2, 96:22-24, 99:24-100:5; Gehl Depo. at 104:1-20, 122:6-16; Keller Depo. at 38:20-23, 59:18-24, 118:7-13; Lynch Depo. at 178:22-179:4, 184:18-20; Newman Depo. at 66:23-25; Oseguera 112:3-17, 113:25-114:3, 124:21-23; Perry Depo. at 57:9-14, 58:8-11, 120:12-16; Predmore Depo. at 66:2-15; Tomasello Depo. at 46:25-47:2, 57:15-19.

[46]     Abich Depo. at 96:9-12.

[47]     Gehl Depo. at 104:5-20; Tomasello Depo. at 57:15-19; Wilson Depo. 179:19-180:2, 181:7-20.

11

---

PLAINTIFF'S REPLY ISO MOTION FOR CLASS CERTIFICATION

to clock in and out for their meal periods and rest periods.[48]  Because they are not required to clock in and out for their meal breaks, there is no way for the declarants to verify that they took at least a thirty (30) minute lunch or their legally-compliant rest breaks.[49]  Allstate simply assumes that the meal breaks were taken.[50]  As such, there is no timekeeping mechanism in place to record the Claims Adjusters' time properly to ensure that they are paid for *all* time they spend working.[51]  Instead, relies on its Claims Adjusters to keep track of their time "mentally" and only pay them for eight (8) hours of work per day unless there was an overtime exception.[52]  Both the Allstate Adjuster and FPL declarants confirmed that the Claims Adjusters rely *exclusively* on the managers to input overtime and premium pay requests.[53]  If the FPL does not input an overtime exception, the Claims Adjuster will not get paid for the overtime worked.[54]  Claims Adjusters are not required to sign off on any timesheets to verify the amount of overtime inputted by their FPLs prior to receiving a paycheck.[55]

/ / / /

---

[48]      Abich Depo. at 104:18-19, 105:20-21; Keller Depo. at 116:13-14, 122:18-19, 122:25-123:3, 124:1-4; Lynch Depo. at 178:20-21; Perry Depo. at 75:5-19, 120:17-22.

[49]      Abich Depo. at 106:9-107:1, 142:11-24; Lohr Depo. 46:15-17.

[50]      Gehl Depo. at 105:2-5; Keller Depo. at 118:14-16.

[51]      Abich Depo. at 119:11-21; Keller Depo. at 55:14-20; Oseguera Depo. at 114:24-115:6.

[52]      Bedard Depo. at 20:25-21:9; Abich Depo. at 95:20-96:2; 119:11-21; Gehl Depo. at 122:10-12; Lohr Depo. at 143:12-15; Perry Depo. at 59:4-16; Tomasello Depo. at 86:6-9.

[53]      Lynch Depo. at 184:21-185:6; Perry Depo. at 57:15-58:7; Tomasello Depo at. 56:24-57:14, 85:3-13; Wilson Depo. at 162:11-163:1, 177:15-24.

[54]      Perry Depo. at 58:16-25; Wilson Depo. at 178:2-8.

[55]      Keller Depo. at 68:25-69:3; Oseguera Depo. at 124:24-125:1.

Allstate's declarants confirm that their managers "[i]nsist" that overtime must be pre-approved unless they are held up a couple of minutes past the end of their shift on a customer call.[56] Allstate prevents its Claims Adjusters from keeping track of their own hours and prevents them from reporting their own overtime hours.[57] They were never trained on how to submit their overtime because their managers would input their overtime for them.[58] The Claims Adjusters are required to explain why overtime is needed.[59] The FPLs will coach and evaluate the Claims Adjusters if they work too much overtime.[60] Interestingly, some of the declarants testified that in that case, Allstate allows them to simply come in later the next day in order to avoid paying overtime.[61] For example, Declarant Christine Mueller testified that if she was still on a customer call fifteen (15) minutes past the end of her shift, rather than paying her overtime, Allstate would simply allow her to leave work fifteen minutes earlier or arrive to work fifteen minutes late the next day in order to avoid paying her the

---

[56]    Abich Depo. at 84:3-8; Diego Depo. at 50:15-51:16, 62:2-67:15, 151:21-152:4, 157:18-21, 167:1-168:13, 169:5-10, 169:11-17, 170:1-11; Gehl Depo. at 105:6-8, 125:3-5, 126:9-13; Oseguera Depo. at 119:15-17; Newman Depo. at 59:13-23, 95:20-25, 65:24-66:9; Perry Depo. at 61:5-16, 64:12-16, 83:14-17, 127:23-25, 131:6-11; Tomasello Depo. at 45:16-46:1, 47:3-20, 92:9-14; Wilson Depo. at 161:3-10, 161:17-162:1, 170:13-18.

[57]    Newman Depo. at 66:10-12.

[58]    Abich Depo. at 84:18-22, 85:22-86:-6; Gehl Depo. at 105:9-107:9; Newman 66:7-9.

[59]    Diego Depo. at 62:2-8, 158:1-4.

[60]    Keller Depo. at 50:7-13; Wilson Depo. at 164:20-24, 167:8-168:9, 170:13-18, 171:23-172:3.

[61]    Perry Depo. at 59:25-61:1, 61:23-62:4, 110:10-20, 132:13-133:14.

13

---

overtime.[62]   That is clearly against California law, which requires payment for any overtime worked over an 8-hour day.

Declarant Kristi Tomasello, who is a current FPL, testified that overtime was monitored.[63]   She testified that she was instructed by her boss to keep the amount of overtime down because as their overtime budget was "out of pattern with the other offices."[64]   Other FPL declarants were also told to keep their Claims Adjusters' overtime down.[65]

The Claims Adjusters all logged in and out of their telephone and computer systems daily, in connection with their start and stop times.[66]   They are told to keep their phones logged on until they actually leave for the day.[67]   Indeed, the Claims Adjusters logged in and out of their telephone systems not only at the start and end of their shifts, but during breaks.[68]   The Allstate declarants confirmed that Allstate maintains reports of their log in and log out times.[69]

Remarkably, many of Allstate's current employee declarants also testified to blatant violations of California's labor laws.  Many of them worked unreported

---

[62]   Mueller Depo. at 205:1-206:1.

[63]   Perry Depo. at 64:12-16, 118:4-8, 130:12-15; Tomasello Depo. at 78:18-20.

[64]   Tomasello Depo. at 79:14-80:5, 80:15-19.

[65]   Keller Depo. at 100:24-101:3; Perry Depo. at 64:2-20, 118:9-11, 130:12-15.

[66]   Abich Depo. at 86:19-87:23, 95:7-12, 95:7-17; Lohr Depo. at 52:24-53:16, 56:12-24, 79:13-15, 80:23-81:8; Lynch Depo. at 179:5-181:20; Oseguera Depo. at 106:14-107:9; Perry Depo. at 51:11-14, 57:9-14, 67:20-23; Tomasello Depo. at 61:20-62:5.

[67]   Oseguera Depo. at 119:3-14

[68]   Lohr Depo. at 79:13-25; Oseguera Depo. at 156:21-157:4; Newman Depo. at 69:18-25

[69]   Abich Depo. at 88:4-24; Oseguera 114:4-13; Newman Depo. at 81:1-13; Perry 51:24-52:13; Tomasello 62:6-8

14

overtime.[70]  Even the FPL declarants testified that they were aware of its Claims

Adjusters working unreported overtime.[71]  A few of Allstate's declarants testified

that they took shorter lunches while some missed their meal breaks or had their

lunches and breaks interrupted.[72]  Allstate did not pay its Claims Adjusters an

extra one (1) hour of pay for working through their meal or rest breaks.[73]  Nor did

it ever train its Claims Adjusters that they were entitled to additional

compensation for its meal-break violations.[74]  Instead, Allstate would just tell the

Claims Adjusters to extend their lunch break by the amount of time that was

interrupted.[75]

**Allstate's Own Declarants Disprove its Claims that Plaintiff was a Lone, Rule-
Breaking "Poor Performer"**

Declarant Diane Bedard sat next to Plaintiff Jack Jimenez's cubicle for a

year or two when he was employed by Allstate as a Claims Adjuster.[76]  She

testified that Mr. Jimenez was an honest and hardworking Claims Adjuster and

had no doubts in her mind that he was unable to finish his work within a 40-hour

---

[70]     Lohr Depo. at 142:21-24; Oseguera Depo. at 175:4-6; Newman Depo. at
83:5-84:1, 92:20-23, 94:14-17, 94:25-95:12, 96:12-25.

[71]     Keller Depo. at 66:7-67:2; Wilson Depo. at 143:19-23.

[72]     Abich Depo. at 152:21-23; Gehl Depo. at 99:10-12; Lynch Depo. at 131:4-8;
Newman Depo. at 51:13-21, 52:13-17, 54:2-19; Perry Depo. at 75:23-76:14, 76:20-
77:8, 77:20-24, 79:14-20, 80:1-6, 81:1-8, 135:20-136:15.

[73]     Gehl Depo. at 101:25-102:11; Lohr Depo. at 45:5-8; Predmore Depo. at
91:2-6, 92:3-7.

[74]     Lohr Depo. at 146:3-147:5; Perry Depo. at 77:6-19, 80:10-25.

[75]     Diego Depo. at 199:25-200:9.

[76]     Bedard Depo. at 56:19-57:6.

15

workweek.[77]  She further testified that both her's and Mr. Jimenez's workload were very time consuming.[78]  She was not aware of any concerns about his job performance.[79]

Contrary to Defendant's mischaracterization, Declarant Millie Abich testified that having a personally assigned claims processor does not mean that the Claims Adjuster is a poor performer.[80]  In fact, she was assigned her own claims processor and was not considered a poor performer by Allstate.[81]  She also did not believe that Plaintiff was a poor performer because he was assigned his own claims processor.[82]  Nor did Allstate consider Claims Adjusters like Plaintiff who worked more overtime than expected as poor performers.[83]

## **ARGUMENT**

### 1.  *DUKES* IS DISTINGUISHABLE ON BOTH THE FACTS AND THE LAW.

Allstate relies heavily and almost exclusively on *Wal-Mart Stores, Inc. v. Dukes* throughout its opposition.  The Supreme Court, however, recognized in the first sentence of its *Dukes* opinion that the facts of that case were extraordinary and unique: "[w]e are presented with one of the most expansive class actions ever." 131 S.Ct. 2541, 2547.  *Dukes* was a proposed class action brought by three (3) named plaintiffs on behalf of **over one-million** putative class members that worked in over **3,000** Wal-Mart stores all across the county.  *Dukes* was a Title VII case

---

[77]  *Id.* at 58:22-24, 60:6-8, 61:10-13; 66:8-13; 68:6-9.

[78]  *Id.* at 58:5-21.

[79]  *Id.* at 60:1-5.

[80]  Abich Depo. at 101:19-102:1.

[81]  *Id.* at 101:9-22.

[82]  *Id.* at 102:4-102:9.

[83]  Lohr Depo. at 58:7-10.

16

---

alleging gender discrimination allegedly inflicted by thousands of individual store managers, each of whom had nearly unfettered, store-level discretion to make promotion decisions.

With that extraordinary record before it, not surprisingly, the Supreme Court found that the three (3) named plaintiffs failed to identify the common-issues "glue" that held together the ***over one-million*** putative class members' Title VII claims.  Given the incredibly massive size of the nationwide class spanning over 3,000 stores, and the broad discretion at issue in the Title VII claims, the Court found that individual issues about "***literally millions of employment decisions***" prevented a finding of commonality.  131 S.Ct. at 2552 (emphasis added).

*Dukes* literally could not be more distinguishable from this narrow class action brought on behalf of Allstate's California Claims Adjusters.  Plaintiff's proposed class is made up of barely over 1,000 current and former Allstate employees that all share the same job title and basic job functions – they are Claims Adjusters that adjust Allstate claims.  In *Dukes*, Justice Scalia analogized that the breadth and disparate geographic makeup of the proposed class, in the absence of any stated policy of discrimination, resulted in a lack of cohesive "glue" that would allow for a finding of commonality.  *Id.* at 2552.  Unlike the extraordinary and massive class proposed in *Dukes*, Plaintiff has pled a narrow, focused class definition comprised of Allstate California Claims Adjusters that share myriad common characteristics.

Plaintiff has presented extensive evidence of the commonality "glue" that was (not surprisingly) missing in the million-person proposed class in *Dukes*.

- The putative class members' job titles were all reclassified from exempt to non-exempt in January 2005;
- Allstate Claims Adjusters worked extensive overtime leading up to the reclassification, such that Allstate paid over one-hundred million dollars to settle an overtime lawsuit;

- The Claims Adjuster workload did not change in any way after the reclassification;

- After being switched to hourly, the Claims Adjusters were still paid for a set 40-hour week, which is still referred to internally as a "salary" – any overtime was self-reported by "exemption";

- Claims Adjusters' managers, with Claims Office Manager knowledge, explicitly instructed class members that overtime was "cancelled," and "no longer allowed";

- All timekeeping and time tracking methods are uniform and finite (overtime is either advance-approved by a manager or allegedly "reported" after the fact);

- The Claims Adjusters are prevented from reporting their own overtime; their managers were the only personnel authorized to record overtime "exceptions";

- The clear policy preference was that all overtime should be "pre-approved" in advance; and

- Allstate keeps records of the Claims Adjusters' time worked through various sources (telephone and computer logins and building entry data), which can be compared to actual time records at trial.

These common issues apply to all Claims Adjusters in California, no matter which of the 13 claims offices at which they were based, or which manager they worked under.  These common issues of fact and law provide the commonality "glue" that was missing in the sweeping, gigantic proposed Title VII discrimination class in *Dukes*.

/ / / /

/ / / /

/ / / /

/ / / /

18

2.   **C**OURTS **F**REQUENTLY **C**ERTIFY **N**ON-**E**XEMPT **E**MPLOYEE **U**NPAID
**O**VERTIME ("**O**FF-**T**HE-**C**LOCK") **A**ND **M**EAL **A**ND **R**EST **B**REAK **C**ASES.

Allstate's main argument in opposition is that Plaintiff's "off-the-clock"
claims cannot be certified because Plaintiff has not put forth evidence of an express
Allstate policy requiring off-the-clock work.  If that were the correct legal
standard, literally not a single "off-the-clock" case would ever be certified because
there is *never* direct evidence that an employer specifically breaks the law by
requiring unpaid work.  Rather, courts certify unpaid wages cases routinely, even if
the face of an alleged "policy" requiring payment for all hours worked.

*Mahoney v. Farmers Ins. Exch*., which came down after Plaintiff filed his
moving papers, is eerily similar to this case on both the facts and the law.  2001
WL 4458513, Case No. CV-2327 (S.D. Tex. Sept. 23, 2011).  *Mahoney* is an
unpaid overtime ("off-the-clock") FLSA case brought on behalf of Farmers'
hourly-paid Claims Adjusters.  The plaintiffs' class-wide theory of recovery was
that the Claims Adjuster class members were pressured to work overtime without
reporting it, despite a written, "official" Farmers policy barring "off-the-clock"
work.  *Id.* at *7 - *10.  Very similar to Plaintiff in this case, the *Mahoney* plaintiff
argued that "Farmers' negative attitude towards overtime requests and pressure not
to take overtime resulted in 'off-the-clock' work."  *Id.* at *7.  Plaintiff also argued
that the Claims Adjusters' supervisors discouraged and "frowned upon" overtime
by requiring advance approval and "suggesting" lower overtime hours and
alternative arrangements in response to overtime requests.  There was also
evidence in *Mahoney*, as there is here, that the Adjusters' managers frowned upon
overtime requests by suggesting that only underperforming, inefficient claims
adjusters would need to request overtime.  *Id.* at *7.

*Mahoney* came before the district court on an FLSA collective action motion
for decertification, which involves a level of scrutiny similar to that at issue in a
Rule 23 motion for class certification.  The district court denied defendant's

motion to decertify, finding that the plaintiff submitted evidence of "informal
pressure not to request overtime" that constituted a "'*policy-to-violate-the-policy*."
*Id.* at p. *9 (emphasis added).  Plaintiff's evidentiary showing is remarkably
similar to that in *Mahoney*.

Another recent Central District case, *Ugas v. H&R Block Enters., LLC,* is
also similar.  2011 WL 3439219, Case No. CV 09-6510-CAS (SHx) (C.D. Cal.
Aug. 4, 2011).  *Ugas* involved a proposed class of non-exempt California Tax
Professionals.  The district court, Judge Snyder, certified a ***California-wide meal-
and-rest break subclass*** and a narrower, region-specific California overtime (off-
the-clock) subclass due to evidentiary shortcomings that are not at issue here.  In
*Ugas*, Judge Snyder held that "plaintiffs have offered sufficient evidence that they
may be able to show that defendants pursue an unwritten policy to improperly
withhold overtime wages from class members in this district."  *Id.* at *9.

Allstate relies upon a few cases where the district court denied certification
motions in off-the-clock cases, principally *Reed v. County of Orange*, 266 F.R.D.
446 (C.D. Cal. 2010) and *Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D.
Cal. 2010).  In *Reed*, the plaintiffs' only evidence of commonality was that all
putative class members were sheriff's deputies and all performed similar duties.
266 F.R.D. at 450.  In *Washington*, the putative class was made up of all non-
exempt employees in the whole company, which was a very mixed bag of nearly
4,000 various restaurant employees, ranging from dishwashers to waiters.  Similar
to the plaintiffs in *Dukes*, the *Washington* plaintiff failed to present any evidence of
predominant common issues that bound the putative class members' claims
together.  The district court based its ruling on the plaintiff's failure to explain at
all how liability and damages could be proven class-wide.

Contrary to *Reed* and *Washington*, Plaintiff's proposed class is made up
California Claims Adjusters, all of whom were reclassified from salary to hourly as
one unit, and all of them are subject to the same uniform time keeping and time

tracking methods.  They are all also subject to the same work pressures and impossibility of performing their massive workloads within 8-hours per day and 40-hours per week.

**3.**     **P**LAINTIFF **M**ET HIS **R**ULE 23 **B**URDENS.

    A.    <u>Plaintiff has Identified – and Supported with Substantial Evidence – the Existence of Common Questions that Apply to all California Claims Adjuster Class Members</u>.

As discussed extensively above, Allstate's commonality argument is based almost entirely upon the concept of the allegedly missing *Dukes* "glue."  However, Plaintiff has identified myriad common issues, policies and procedures that affect the entire class.  Indeed, Allstate does not dispute that all of the Allstate Claims Adjuster class members were subject to common factual scenarios and policies:

- Each MCM is set up and managed in the same hierarchal structure; Terry Lukowski oversees all of California claims, each claims office (MCO) has one head manager (MCM) that reports to Mr. Lukowski and oversees the mid-level managers (FPLs) that oversee the individual Claims Adjusters;
- They were all reclassified from exempt to non-exempt in early 2005;
- They were all subject to the same onerous workload after the reclassification as existed before the reclassification;
- They were all suddenly expected to manage their pre-reclassification workload within a newly-imposed 40-hour workweek;
- They were all instructed to record time through their managers in the exact same ways (they were prohibited from keeping time themselves);

/ / / /

PLAINTIFF'S <u>R</u>EPLY ISO MOTION FOR CLASS CERTIFICATION

- • They all use Allstate telephones and computers that keep track of hours worked; and

- • Their earnings are all expressed in "salary" terms for a set, standard 40-hour work week.

These common issues, which are common to this focused and narrow pled class definition (especially as compared to that at issue in *Dukes*) easily furnish the "glue" missing in the expansive, unworkable *Dukes* proposed class definition.

**B.**   <u>Common Questions Predominate Across the Entire Proposed Class</u>.

Allstate argues that its declarants' written testimony disproves Plaintiff's (and his seven (7) declarants' testimony) as a matter of law and destroys commonality and predominance.  As a threshold matter, shockingly, Allstate was only able to obtain and file 18 *current* employee class member declarations (the rest were from managers).  Allstate *currently* employs nearly <u>1,000</u> Claims Adjusters – over whom it has complete and unfettered access – and it could only get a *tiny fraction* of them to testify on behalf of the company's alleged defenses to Plaintiff and his declarants' allegations.  And, as will be addressed in Plaintiff's motions to strike their declarations, several of these current employee declarants refused to appear for deposition after being served with valid deposition subpoenas.  By contrast, the Court only gave Plaintiff access to a random sample of 100 current and former Allstate Claims Adjusters.

Allstate's main argument against predominance is that there are differences in the class members' "employment."  [Opp. at 21-22]  Allstate essentially argues that predominance cannot be met here because the Claims Adjusters work in 13 different offices under different managers.  Allstate, however, ignores Plaintiff's extensive evidence of uniform policies and procedures that govern all California Claims Adjusters (identified as common issues of law and fact) and the methods of electronic time keeping and recording that can be compared to the "reported"

overtime hours at the damages phase of trial.  Allstate's top-down corporate hierarchy, the fact that all class members are Claims Adjusters, and the uniform labor policies and practices vis-à-vis time keeping and time reporting make this case ideal for class-wide adjudication.

### C.   Plaintiff's Claims are Typical to those of his Fellow Allstate Claims Adjusters.

Allstate makes a half-hearted and barely comprehensible attack on Plaintiff's typicality.  [Opp. at 21]  As Plaintiff notes in his moving papers, Rule 23(a)(3) requires only that the plaintiff's claims be "reasonably related" to those of the absent class members.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).  Mr. Jimenez and his supporting declarants all make claims for unpaid overtime and meal and rest breaks.  Mr. Jimenez, like all putative class members, was a Claims Adjuster during the class period, whose job was reclassified from exempt to non-exempt in 2005.

Allstate argues that specific and minute aspects of Mr. Jimenez' work experience at Allstate (he was an adjuster for nearly three decades) make his claims atypical.  That is not the law.  Rather, as Allstate's own case law makes clear, the typicality requirement "generally 'refers to the nature of the claim or defense of the class representative, ***and not to the specific facts from which it arose*** or the relief sought.'"  *Washington*, 271 F.R.D. at 637 (emphasis added).

### D.   Plaintiff's Class Claims are Superior and his Trial Methodology Plain is Unaffected by *Dukes*.

Again, Allstate relies upon *Dukes* to argue that Plaintiff's proposed statistical and sociological evidence, for use at a class-wide trial down the road,

23

will be an appropriate trial-management tool.[84]   [Opp. at 18-20]   *Dukes* does not, however, hold that statistical evidence is no longer admissible or relevant at the class certification stage in a *wage-and-hour case* of slightly over 1,000 class members, a factual scenario quite distinct from the extraordinary facts at issue in *Dukes*.

Rather, the Court in *Dukes* held that trial by statistics would be ineffective in a Title VII case where the legal standard involves adjudicating the "reasons for a particular employment decision." *Dukes*, 131 S.Ct. at 2552.  Here, by contrast, the only legal standards are employer knowledge (whether actual *or constructive*) and damages in the form of amount of unreported time worked.

Allstate also argues that its "individual defenses" preclude class-wide treatment.  This same argument was rejected in *Mahoney*, 2011 WL 4458513 at *10 (certifying a non-exempt, hourly paid claims adjuster class).  Allstate will be able to present all applicable defenses – including any *de minimus* defense (which is very unlikely to apply here given the hours of unpaid overtime at issue in this case) and the issue of employer knowledge – at a liability phase of trial.  *Id.* ("The liability stage will focus on the class-wide question of whether Farmers knew or should have known that [the class members] were working off-the-clock . . ."   The damages phase will deal with the quantitative analysis of hours worked.  *Id.*

Allstate also argues, for the first time at this stage, that Plaintiff cannot represent a small subclass because of a Los Angeles Superior Court order granting certification in another case.  While this order does bolster Plaintiff's argument that his claims are subject to common proof, this Court may craft a certification order that excludes any members of the *Williams* class – indeed, this Court has the

---

[84]   Nearly all of Allstate's arguments challenging the admissibility and value of Plaintiff's expert witnesses are made in its motions to strike the reports of Drs. Krosnick and Bielby.  Accordingly, Plaintiff will address those arguments in opposition to those Allstate motions, set for hearing on December 12, 2011.

discretion to certify any subclass or re-tooled class definition based upon the
evidence before it.  *Ugas*, 2011 WL 3439219 at * 12 (redefining the certified
class); *see also Arrendondo v. Delano Farms Co.*, Case No. CV F 09–1247 LJO
DLB, 2011 WL 1486612, *17 (E.D. Cal. April 19, 2011) (certifying a class of
court-created subclasses).

## <u>CONCLUSION</u>

Plaintiff has provided substantial evidentiary support for his theories of
recovery, which are amenable to class treatment.  The Court should grant
Plaintiff's motion and certify the proposed Allstate Claims Adjuster class.

DATED:  November 3, 2011                **R. REX PARRIS LAW FIRM**

By: _____/s/_____
                R. Rex Parris
                Alexander R. Wheeler
                Kitty Szeto
                Attorneys for Plaintiff