## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**      **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Dkt. 67)**

**DEFENDANT'S MOTIONS TO STRIKE DECLARATIONS OF DR. JOHN KROSNICK (DKT. 70), DR. WILLIAM BIELBY (DKT. 71), AND GINA COPES (DKT. 72)**

**PLAINTIFF'S MOTIONS TO STRIKE DECLARATIONS OF DANIEL J. SLOTTJE (DKT. 90), PHILIP E. TETLOCK (DKT. 91), CHERYL WILSON (DKT. 95), ELISSA PREDMORE (DKT. 96), HARLEY THOMPSON (DKT. 97), JOLYN ELLIOTT (DKT. 98), LORI HANSEN (DKT. 99), MATTHEW WILSON (DKT. 100), SALVADOR DIEGO (DKT. 101)**

**PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER STRIKING THE DECLARATIONS OF SHERYL L. SKIBBE AND EILEEN C. ZORC (DKT. 151)**

## I.    INTRODUCTION

Plaintiff Jack Jimenez ("Plaintiff") brings this putative class action on behalf of himself and approximately 1300 other California-based claims adjusters, against his former employer, Defendant Allstate Insurance Company ("Defendant"). He contends that, notwithstanding Defendant's 2005 reclassification of its claims adjusters from exempt to non-exempt hourly employees, members of the putative class allegedly have been expected to work in excess of 40 hours per week without receiving overtime compensation or proper meal and rest periods.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

Pursuant to Rule 23, Plaintiff has moved to certify a class defined as: "All current and former California-based 'Claims Adjustors,' or persons with similar titles and/or similar job duties, who work(ed) for Allstate Insurance Company within the State of California at any time during the period from September 29, 2006 to final judgment." Mot. for Class Cert. ("Mot."), p. 2, Dkt. 67. The Court held a hearing on this matter on February 6, 2012, at which each side presented oral argument. Dkt. 155. At the conclusion of the hearing, the Court took the matter under submission. For the reasons stated in this Order, the Court GRANTS in part and DENIES in part the motion for class certification.

The Court grants the motion and certifies the proposed class with respect to Plaintiff's first cause of action for unpaid overtime compensation, along with the following derivative causes of action: Plaintiff's fourth cause of action for violation of California Labor Code §§ 201 and 202 (wages not timely paid upon termination); and Plaintiff's sixth cause of action for violation of California Business and Professions Code § 17200, *et seq.* The Court denies the motion to certify the proposed class with respect to Plaintiff's second and third causes of action for meal and rest period violations. To the extent that Plaintiff's derivative claims rely in part on these claims as the underlying violations, certification as to those portions of such claims is also denied.[1]

## II.    BACKGROUND

### A.    Allstate Corporate Structure

Defendant Allstate has 13 Market Claims Offices ("MCOs"), which are in different locations in California. Oylear Depo. 19:1-17, Wheeler Decl., Exh. A, Dkt. 67-2. All of Defendant's California claims operations are considered part of one "Claims Service Area." *Id.* at 22:2-3. The head of all California claims, Terry Lewkoski ("Lewkoski"), oversees the MCOs, each of which has a Market Claims Manager ("MCM") who manages the MCO and reports directly to Lewkoski. *Id.* at 22:2-13. In general, MCOs are divided into "units," which are organized by type of claim, *e.g.*, automobile liability, automobile damages, property. Each unit within an MCO is headed by a Frontline Performance Leader ("FPL") who directly oversees the claims adjusters. *Id.* at 22:23-23:23; Ruiz Depo. 18:22-19:3, Wheeler Decl., Exh. B, Dkt. 67-2.

---

[1] Plaintiff's fifth cause of action for violation of California Labor Code § 226(a) (non-compliant wage statements) is dismissed without prejudice because Plaintiff is a member of a certified class with respect to this claim in *Williams v. Allstate Ins. Co.*, Case No. BC 382577, which is pending in the Los Angeles Superior Court. Plaintiff did not opt out of the certified class in *Williams* and, for this reason alone, cannot represent the same certified class in this action.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|----------|--------------------------|------|----------------|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

**B.      Claims Adjusters**

Since the filing of this lawsuit, more than 1300 claims adjusters have worked for Defendant in California. Defendant divides its claims adjusters into the following categories: (i) automobile liability (determining coverage and relative fault in an accident); (ii) automobile claims (physical damage to or total loss of an automobile); (iii) property claims (physical damage or loss to a building and/or its contents); (iv) casualty claims (liability claims for bodily injury or damage to property and first-party claims for medical claims under automobile policies and uninsured or underinsured motorist claims); and (v) special investigation (suspected fraudulent claims). Currently, there are approximately 86 FPLs in California who supervise approximately 880 adjusters: 23 Auto FPLs, 19 Liability Determination FPLs, 31 Casualty FPLs, 8 Property FPLs and 5 Special Investigation Unit ("SIU") FPLs. These FPLs are responsible for, among other things, monitoring the workload of the adjusters in their respective units, managing and approving overtime requests, training new adjusters and scheduling work hours and breaks. Cohn Depo. 36:24-38:5, 46:5-16, 50:24-51:11, 99:20-100:21, Paley Decl., Exh. E, Dkt. 83-1. Some of the MCOs do not have all five types of adjusters. Indeed, some MCOs have predominantly only one type of adjuster, such as Central Auto, which primarily has Auto Field adjusters; other MCOs have a greater variety of types of adjusters. Def. Supp. Brief, Exh. A, Dkt. 147-1.

Allstate also differentiates between "inside" and "outside" adjusters. Outside adjusters include those in the Auto Field and Property Field areas. In general, such adjusters do not report to a specific office although they are officially assigned to one of the MCOs. These adjusters work with less immediate supervision than inside adjusters, who spend a significant amount of their work day in an MCO. Auto Field adjusters inspect vehicles located at auto body shops and claimants' homes to evaluate claimed damages and negotiate settlements. Property Field adjusters inspect losses, evaluate coverage and cost of repair, and negotiate settlements with homeowners or small businesses. Both types of field adjusters obtain their assignments from the "Workforce Management System" or "WFMS," a software system available on the laptop computers used by these adjusters. WFMS is reportedly designed to facilitate an eight-hour workday by scheduling a set number of inspections to be completed each day, taking into account the expected time per inspection, the location of the inspection and the anticipated travel time to and from that location. WFMS also inserts a one-hour block of unscheduled time in the middle of the work day in anticipation of the meal and rest breaks that are to be provided to claims adjusters.

Inside adjusters handle claims from within the MCO; they do not perform on-site inspections. In general, inside adjusters are subject to more immediate supervision and more interaction with their FPLs and MCMs. The work schedules, and sometimes meal breaks, of inside adjusters are set by their FPLs to ensure sufficient coverage of the work of the MCO, including an ability to answer and respond to telephonic inquiries received at the MCO.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

According to Defendant, whether an adjuster works overtime and the reasons for such overtime may vary significantly from adjuster to adjuster, depending on the type of claims the adjuster is handling and whether the adjuster performs his or her work in an office or in the field. Defendant also contends that the job duties and volume of work of adjusters vary according to the type of claim. For example, an Auto Field adjuster who has to travel to work in the field is assigned appointments based on factors such as the distance between appointments, the type of appointment and date of the claim. Some adjusters receive fewer assigned appointments because they must drive longer distances between appointments. Similarly, different types of appointments require different amounts of time to complete. For example, a total loss appointment is scheduled for two hours while a supplemental appointment is scheduled for only 55 minutes.

Another factor that affects the workload of adjusters is whether the claimant is represented by an attorney. Adjusters dealing with claimants who have not retained counsel investigate claims, make liability decisions and settlement offers, and obtain and review medical bills and files. Adjusters who deal with claimants who are represented by counsel spend more time in the field because their cases are in litigation. External factors, such as the season, weather, natural disasters, and geographic region, also affect workload.

**C.     Workload Balancing Measures**

Since 2008, Allstate has implemented formal workload balancing measures facilitated by a computer system called NextGen. This system distributes new claims files to adjusters depending on their respective skill sets, geographic locations and workloads. Before Nextgen was put into service, each MCO would have a "controller" who would manually distribute new claims among the adjusters at that location. MCMs could adjust caseloads within their respective MCOs based on their own informal procedures. Since the implementation of NextGen, adjusters receive new claims on a rotational basis among adjusters in the same product segments within either the entire Southern California or Northern California region.

**D.     Plaintiff's Background**

From 2006 until his termination in September 2010, Plaintiff worked as a casualty adjuster in the Diamond Bar MCO. He reported to four different FPLs during this period: Silvia Luevano, Karen Carpenter, Maria Gazzoul and Karen Cohn. Dwight Oylear was the Diamond Bar MCM. Plaintiff was assigned to handle Minor Impact Soft Tissue claims ("MIST"). MIST claims have "fairly quick turnover with little possibility of injury, so they had a lower level of complexity." Jimenez Depo. 38:25-39:8, Paley Decl., Exh. L, Dkt. 83-2. Jimenez handled both represented and unrepresented claims, and admits that his schedule from day-to-day varied "without a question." *Id.* at 39:9-14, 66:22-67:13.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

### E.     Reclassification from Salaried to Hourly

In early 2005, Allstate reclassified all California claims adjusters from "salaried," *i.e.,* exempt from the 40-hour work week and resulting overtime rules, to "hourly," *i.e.,* not exempt from the same 40-hour work week and overtime rules. This reclassification was the product of a misclassification wage-and-hour lawsuit. Cohn Depo. 54:4-21, Wheeler Decl., Exh. C; Lewkoski Depo. 7:19-24, Wheeler Decl., Exh. D, Dkt. 67-2. Before the reclassification, claims adjusters worked as many hours as necessary to keep up with their respective caseloads. According to the allegations made in the aforementioned litigation, this often required work of more than eight hours per day and 40 hours per week. Ruiz Depo. 108:19-109:14, Wheeler Decl., Exh. B, Dkt. 67-2. Despite the 2005 reclassification, the compensation of claims adjusters is still referred to as a "salary," which is reflected in an annual dollar amount. Oylear Depo. 84:3-20, Wheeler Decl., Exh. A; Ruiz Depo. 21:11-25, Wheeler Decl., Exh. B, Dkt. 67-2. Allstate does not publish or advertise claims adjusters' hourly compensation rates either to existing or potential claims adjusters; instead, adjusters are paid within pre-set "salary bands." Ruiz Depo. 21:11-25, Wheeler Decl., Exh. B; Gilbert Depo. 31:4-6, 32:23-33:6, Wheeler Decl., Exh. F, Dkt. 67-2. Thus, despite the reclassification, claims adjusters are generally paid what is labeled a "salary" based on the premise that they work 40 hours per week.

### F.     Time Recording

Since the reclassification, Allstate has not had its adjusters prepare and submit time cards or punch time clocks to keep track of their time. Ruiz Depo. 86:6-9, Wheeler Decl., Exh. B; Lewkoski Depo. 29:21-25, Wheeler Decl., Exh. D, Dkt. 67-2. Instead, time records are prepared by those managing the adjusters. These time cards are set to a default of eight hours per day and 40 hours per week. All California claims adjusters are paid a *de facto* salary that assumes they worked the standard eight hours per day and 40 hours per week. Any time over that set schedule is considered a timekeeping "exception" or "deviation" unless it is "pay-neutral." Oylear Depo. 37:7-14, Wheeler Decl., Exh. A; Collins Depo. 34:20-35:19, 39:7-41:22, Wheeler Decl., Exh. E, Dkt. 67-2.

Claims adjusters are expected to justify any "non-pay-neutral" deviations from the eight-hour and 40-hour time periods to their managers. No evidence has been presented that there is a policy that calls for the managers to change these default settings on their own initiative based on their potential observation of the time of an adjuster's arrival and departure from a shift. The evidence presented does show, however, that a manager is to make an adjustment when an employee's request to work overtime or to leave prior to the end of a particular shift is approved. In sum, Allstate does not have claims adjusters report their own overtime and other schedule exceptions, and instead relies exclusively on managers to input overtime and premium pay requests. Collins Depo. 34:20-35:19, 84:2-23, 86:23-87:6, Wheeler Decl., Exh. E; Gilbert Depo. 57:12-58:8, 119:2-9, Wheeler Decl., Exh. F; Cohn Depo. 47:6-9, Wheeler Decl., Exh. C, Dkt. 67-2. Most claims adjusters log in and out of multiple

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

computer and telephone systems in connection with the start and end of their workdays. However, Allstate does not compare the time reported on their adjusters' time cards with the log in and out times that may be reflected on these systems. Ruiz Depo. 86:110-91:25, 138:8-11, Wheeler Decl., Exh. B, Dkt. 67-2.

**G.    Overtime Approval Process**

The managers of each of the 13 California MCOs have been trained to use the same policies and procedures for the payment of overtime to California claims adjusters. Lewkoski Depo. 90:20-91:6, 156:10-17, Wheeler Decl., Exh. D, Dkt. 67-2. If a claims adjuster reports an overtime non-pay-neutral exception, there are two ways that such a pay deviation can be recorded in Allstate's timekeeping system. Thus, it can be entered by either the claims adjuster's manager or the MCO's administrative assistant. *Id.*

Although this system requires management approval before the recording of any overtime, the parties dispute whether managers, and specifically MCMs, are tasked with staying within an annual operations budget that includes overtime pay. Plaintiff contends that the performance evaluations of, and resulting bonuses to, MCMs are dependent on how closely an MCM conforms to the set annual budget; this would mean that an MCM would have a disincentive to approve and report overtime. Ruiz Depo. 131:13-18, 132:16-19, 136:14-137:16, Wheeler Decl., Exh. B, Dkt. 67-2. Defendant responds that there are no labor budgets for overtime. Thus, MCMs are not held to overtime budgets and are not disciplined for exceeding any such nonexistent budgets. Ruiz Depo. 132:20-24, Wheeler Decl., Exh. B, Dkt. 67-2; Gilbert Depo. 109:10-17, 110:1-16, Paley Decl., Exh. G, Dkt. 83-2; Bleifer Depo. 136:14-21; 142:9-143:5, 154:3-18, Paley Decl., Exh. C, Dkt. 83-1; Morrison Depo. 144:12-24, 146:2-19, 166:14-22, Paley Decl., Exh. R, Dkt. 83-3; Oylear Depo. 124:15-125:2, Paley Decl., Exh. S, Dkt. 83-3; Cohn Depo. 72:17-22, 116:1-10, Paley Decl., Exh. E, Dkt. 83-1; Lewkoski Depo. 85:12-87:20, Paley Decl., Exh. P, Dkt. 83-3.

Considering the cited testimony as a whole, it is undisputed that each MCO has a compensation budget, which is nonnegotiable, and that overtime compensation is included within that total compensation budget. Ruiz Depo. 131:13-18, 132:16-24, Wheeler Decl., Exh. B, Dkt. 67-2. However, there is no specific limit as to how much of that total compensation budget can be used to pay overtime. *Id.* at 132:16-24. Nonetheless, there likely is a functional limit on overtime. Thus, because the overall compensation budget is of a set amount, logic dictates that any excessive amounts of overtime would likely lead to a budget overrun.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |


## III.   ANALYSIS

### A.    The Underlying Claims

Plaintiff seeks to certify this proposed class with respect to the following causes of action advanced in his First Amended Complaint ("FAC"): (i) failure to pay wages for all hours worked, including unpaid overtime in violation of California Labor Code §§ 510 and 1198; (ii) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (iii) violation of California Labor Code § 226.7 (unpaid rest period premiums); (iv) violation of California Labor Code §§ 201 and 202 (wages not timely paid upon termination); (v) violation of California Labor Code § 226(a) (non-compliant wage statements); and (vi) violation of California Business and Professions Code § 17200, *et seq*. Dkt. 27. Each of the subsequent causes of action is derivative of Plaintiff's first three claims for failure to pay overtime and failure to compensate for missed meal and rest periods.

### B.    Class Action Standards

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes et al.*, 131 S. Ct. 2541, 2550 (2011). Under Rule 23 of the Federal Rules of Civil Procedure, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 131 S. Ct. at 2551.

In seeking class certification, a putative class representative plaintiff must establish that the proposed class meets each of the prerequisites of Rule 23(a). *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. FED. R. CIV. P. 23(a). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551 (italics in original). Once these four prerequisites are satisfied, a court must consider whether the proposed class can be maintained under the standards of Rule 23(b). *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

### C.    Rule 23(a) Prerequisites

####     1.    Numerosity

Rule 23(a)(1) requires that, in order to be certified, a class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

*Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). No specific number of members is needed to warrant a class action. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). Here, the parties do not dispute that the putative class contains approximately 1300 claims adjusters. Accordingly, the numerosity requirement is satisfied.

      2.    Commonality

        a)    Legal Standard

Rule 23(a)(2) requires that the case involve "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The commonality requirement is satisfied only by a common question "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "Requiring there to be common questions of law or fact prior to certifying a class serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998).

        b)    Unpaid Overtime Claim

          (1)    Legal Standard

Under California law, it is the employer's obligation to pay each employee for all time the employer "engage[s], suffer[s] or permit[s]" such employee to work. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 586 (2000). Thus, to prove the merits of an unpaid overtime claim, a plaintiff must prove that "(1) he performed work for which he did not receive compensation; (2) that defendants knew or should have known that plaintiff did so; but that (3) the defendants stood 'idly by.'" *Adoma v. The Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 548 (E.D. Cal. 2010) (quoting *Lindow v. United States*, 738 F.2d 1057, 1060-62 (9th Cir. 1984)).

          (2)    Plaintiff's Arguments

Plaintiff's theory of the case, which he offers in support of the establishment of commonality, is as follows: Since the reclassification of claims adjusters from exempt to non-exempt employees, Defendant has attempted to avoid making any actual changes to the manner of payment and amounts its claims adjusters are paid. It does so by assuming that employees always work only 40 hours per week, by creating a culture that discourages the reporting of overtime and by turning a "blind eye" to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|----------|--------------------------|------|----------------|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

unpaid overtime actually worked. Specifically, at each of the 13 MCOs, overtime pay is controlled by managers, who are the only persons with the power to approve overtime and ensure that it is compensated. However, the managers have incentives to avoid paying overtime because they want to meet their operating budgets. Thus, based on the legal standard explained above, Plaintiff contends that common questions exist regarding: (i) whether class members generally worked overtime without receiving compensation as a result of Defendant's unofficial policy of discouraging the reporting of such overtime, Defendant's failure to reduce class members' workload after the reclassification, and Defendant's policy of treating their pay as salaries for which overtime was an "exception"; (ii) whether Defendant knew or should have known that class members did so; and (iii) whether Defendant stood idly by without compensating class members for such overtime.

Plaintiff contends that putative class members are similarly situated and commonality is satisfied on the following bases: (i) each had his or her job reclassified from exempt to non-exempt in January 2005; (ii) each allegedly worked overtime leading up to the reclassification; (iii) the common work load for claims adjusters did not change after the reclassification; (iv) despite being classified as hourly employees after reclassification, each was still paid for a set 40-hour week, which is referred to internally as a "salary," and any overtime had to be reported through a manager as an "exception"; (v) FPLs, with the knowledge of MCMs, explicitly instructed claims adjusters that overtime was "cancelled" and "no longer allowed"; (vi) all timekeeping and tracking methods are uniform in that overtime is always either approved in advance by a manger or reported after the fact, again to a manager, who has the sole power to enter such overtime; (vii) each claims adjuster was prevented from reporting his or her own time, and managers were the only personnel authorized to record overtime "exceptions"; (viii) the clear policy preference was that all overtime should be "pre-approved"; (ix) when adjusters attempted to get approval for overtime, they were encouraged to find another way to accomplish their work and be more efficient, and were generally discouraged from requesting any such overtime; and (x) Defendant has access to records of the time worked by each claims adjuster through various contemporaneous sources, such as telephone and computer logins and building entry data, but does not use them to calculate time worked or to confirm the accuracy of the time card data.

(3)     Defendant's Arguments

Defendant responds by relying on *Dukes* to argue that Plaintiff has failed to show the requisite "glue" that holds together the disparate claims of the putative class. Defendant's primary arguments are that: (i) Allstate's policies are lawful because they mandate that Allstate compensate employees for all overtime worked; (ii) the experiences of seven adjusters who worked off-the-clock to cover for their performance problems and who voluntarily skipped meal and rest breaks are not representative of the experiences of all 1180 claims adjusters who have worked in 13 different offices, under different FPLs and MCMs, on different types of claims, and in different physical settings; further, there is no evidence that any adjusters other than Plaintiff and the seven other declarants failed accurately to record their

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

time, or that they failed to do so for the same reasons; and (iv) in light of the Supreme Court's decision in *Dukes*, Plaintiff cannot rely on statistical sampling to create commonality where there is none.

(4)      Defendant's First Argument: Allstate's Lawful Policies

Defendant contends that its compensation policies are lawful. Thus, Defendant asserts that it is Allstate's policy to compensate adjusters for all time actually worked. Accordingly, any liability must be based on deviations from that policy, which are not common across the class. Defendant presents the testimony of a number of putative class members and their managers to demonstrate that adjusters were always paid for reported, worked overtime, and that some adjusters claim they never worked without compensation and were provided with breaks, which contradicts any claim of a common policy.[2]

Although Defendant has presented testimony that its official policies are lawful, this showing does not end the inquiry. Plaintiff's theory is that Defendant has a common practice of not following its official policy regarding overtime. Thus, Plaintiff and other declarants who support Plaintiff's motion admit that they have been paid overtime; they do not claim that overtime is never paid. Instead, they assert that it was Allstate's common practice not to follow its policy requiring employee compensation for all time worked. If Plaintiff is correct that such a practice existed, this practice could be a common source of putative class members' off-the-clock work. *See Mahoney v. Farmers Ins. Exch.*, No. 4:09-cv-2327, 2011 WL 4458513, *9 (S.D. Tex. Sept. 23, 2011) ("[P]laintiffs here have submitted significant evidence regarding their supervisors' informal pressure not to request overtime, actual refusal to grant overtime, and explicit instruction… how to avoid detection of 'off-the-clock' work. These practices amount, in our estimation, to evidence of a 'policy-to-violate-the-policy.'"); *see also Brinker Rest. Corp. v. Super. Ct.*, __ Cal. 4th __, No. S166350, 2012 WL 1216356, *26 (Apr. 12, 2012) (noting that the employee's "off-the-clock" claim lacked commonality because the employee had not "presented substantial evidence of a systematic company policy to pressure or require employees to work off the clock, a distinction that differentiates this case from those [the employee] relies upon in which off-the-clock classes have been certified").

---

[2] Cohn Depo. 73:6-16, 115:17-25, 149:15-151:1, 151:6-24, 154:6-14, 184:19-185:22, Paley Decl., Exh. E, Dkt. 83-1; Collins Depo. 35:11-24, 39:7-22, 43:5-23, Paley Decl., Exh. F, Dkt. 83-1; Gilbert Depo. 44:6-19, 51:25-52:11, 65:15-25, 128:24-129:1, 150:24-151:12, 151:20-25, 152:1-3, 153:1-9, Paley Decl., Exh. G, Dkt. 83-2; Jimenez Depo. 89:11-22, 120:1-4, 120:16-20, 121:9-23, 122:24-123:12, 124:10-13, 128:6-14, Paley Decl., Exh. L, Dkt. 83-2; Lewkoski Depo. 90:19-91:4, Paley Decl., Exh. P, Dkt. 83-3; Morrison Depo. 136:12-137:4, Paley Decl., Exh. R, Dkt. 83-3; Oylear Depo. 44:23-46:4, Paley Decl., Exh. S, Dkt. 83-3; Ray Depo. 33:5-7, 80:5-19, Paley Decl., Exh. T, Dkt. 83-3; Rubinoff Depo. 41:1-10, 47:18-23, 69:4-8, 110:10-18, 112:20-24, 114:22-24; 116:16-18, 119:9-15, 119:24-120:1, Paley Decl., Exh. U, Dkt. 83-3; Saunders Depo. 60:5-13, 62:3-13, Paley Decl., Exh. W, Dkt. 83-4; Vargas Depo. 40:4-42:8, 49:20-50:13, Paley Decl., Exh. Y, Dkt. 83-4.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

(a)      Plaintiff's Evidence

Plaintiff has presented sufficient evidence to support the inference that Allstate has a common practice of not following its overtime policy. Although Defendant has presented testimony indicating that reported hours were always paid, such testimony does not directly negate Plaintiff's contention that officially "unreported" hours went unpaid despite Allstate's knowledge of those hours. There is evidence that Defendant's statewide policy was to limit the ability to input overtime to managers, which creates common control. To "manage" overtime – *i.e.*, limit "non-pay-neutral" expenditures such as overtime – MCMs and FPLs were "keeping tabs" on overtime requests. Oylear Depo. 125:3-21, 130:6-131:16, Wheeler Decl., Exh. A; Ruiz Depo. 72:16-73:12, Wheeler Decl., Exh. B; Cohn Depo. 154:15-155:16, Wheeler Decl., Exh. C, Dkt. 67-2. This directive to "manage" overtime came directly from the head of claims for California, Lewkoski, who monitors the overtime expenditure levels per MCO and displayed the overtime expenditures per office at managers' meetings. Ruiz Depo. 121:16-122:14, 127:8-128:2, Wheeler Decl., Exh. B, Dkt. 67-2. And, Lewkoski testified that when a claims adjuster reports overtime to his or her manager, he or she should be ready to explain why the time is needed. Lewkoski Depo. 37:10-13, Wheeler Decl., Exh. D, Dkt. 67-2.

Plaintiff also has presented evidence that MCMs make it clear to the claims adjusters that repeated overtime requests are synonymous with "performance issues" that management must address. Gilbert Depo. 67:11-69:4, 70:4-10, 73:17-74:25, 111:5-10, 116:14-18, Wheeler Decl., Exh. F, Dkt. 67-2 ("In cases where the adjuster is having performance issues of doing the job, we will ask them not to put in the overtime."); Collins Depo. 110:11-111:5, Wheeler Decl., Exh. E, Dkt. 67-2. Similarly, overtime pre-approval requests are often met with "suggestions" on how a claims adjuster can be better trained on "efficiency" and alternative methods of getting the work done that do not require overtime. Ruiz Depo. 66:9-67:1*5,* Wheeler Decl., Exh. B; Gilbert Depo. 73:17-74:25, Wheeler Decl., Exh. F, Dkt. 67-2.

Plaintiff also relies on the declarations of seven claims adjusters who state that these "management methods" have a profound effect on the actual adjusters' work behavior. Specifically, Allstate's general message that only underperforming, "inefficient" adjusters would require overtime to keep up with their workloads made adjusters reluctant to report overtime because they feared being perceived as underperformers. Beck Decl. ¶¶ 10-11; Copes Decl. ¶ 8; Hall Decl. ¶¶ 9-10; Ray Decl. ¶¶ 6-8; Rubinoff Decl. ¶ 10; Saunders Decl. ¶ 7; Vargas Decl. ¶¶ 8, 10; Dkt. 67-3. One of Plaintiff's declarants produced an email from her FPL with the subject line "Overtime is cancelled! Effective Immediately." Wheeler Reply Decl., Exh. A, Dkt. 88-1. The e-mail concludes by stating, "No overtime and no exceptions!" *Id.* Plaintiff contends that his seven declarants demonstrate that this is not an isolated problem because they are from different MCOs and worked under different managers.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

There are also common questions pertaining to what Defendant knew or should have known. As in *Adoma*, 270 F.R.D. 543, the common question presented is whether knowledge can be imputed to Defendant in light of its access to time records in the form of phone and computer logins and building entry data. Further, some of Plaintiff's declarants testify that their managers saw them working overtime either before or after their scheduled shifts or on the weekend, or otherwise were aware of such off-the-clock work, and did not inquire as to whether overtime was being requested for such time or take any other action, despite the fact that they, as managers, have the exclusive power to report overtime. Beck Decl. ¶ 8; Hall Decl. ¶ 7; Ray Decl. ¶ 8; Saunders Decl. ¶ 7; Vargas Decl. ¶ 9; Dkt. 67-3.

(b)      Defendant's Rebuttal Evidence

To rebut Plaintiff's evidence, Defendant presents deposition testimony from Plaintiff's declarants in which such declarants state that they were never disciplined for asking to work overtime and were not aware of any other adjusters who had been subjected to discipline for doing so.[3] Defendant also presents a number of competing declarations, 18 of which were made by current Allstate employees and putative class members. These declarations and deposition testimony are advanced to support the claim that other putative class members were capable of performing their work within an eight-hour work day and 40-hour week, and that they did not work off-the-clock or feel pressure to work without compensation. *See* Appendix, Dkt. 84. Plaintiff has moved to strike a number of these declarations. Dkt. 90-101. Plaintiff also contends that the Court should discount these declarations "because of the risk of bias and coercion inherent in that testimony." *Morden v. T-Mobile USA, Inc.*, No. C05-2112RSM, 2006 WL 2620320, *3 (W.D. Wash. Sept. 12, 2006). Finally, Plaintiff presents evidence to support his concerns regarding bias and coercion, including testimony indicating that each declaration was drafted by Defendant's attorneys,[4] some of the declarants were never told how their declarations were going to be used or that they would be used to defend Allstate in this case,[5] many had no idea what this lawsuit

---

[3] Beck Depo. 50:1-6, Paley Decl., Exh. A, Dkt. 83-1; Hall Depo. 67:5-10, 67:18-20, Paley Decl., Exh. I, Dkt. 83-2; Ray Depo. 52:12-53:24, 56:19-21, Paley Decl., Exh. T, Dkt. 83-3; Rubinoff Depo. 100:19-101:4, Paley Decl., Exh. U, Dkt. 83-3; Saunders Depo. 54:14-18, 56:4-6, Paley Decl., Exh. W, Dkt. 83-4; Vargas Depo. 44:21-45:4, Paley Decl., Exh. Y, Dkt. 83-4.

[4] Abich Depo. 49:17-18, Amd. Wheeler Decl., Exh. I, Dkt. 88-2; Diego Depo. 132:20-23, 133:13-134:15, 135:2-10, 140:4-9, 140:12-17, Amd. Wheeler Decl, Exh. K, Dkt. 88-2; Gehl Depo. 58:23-59:5, Amd. Wheeler Decl., Exh. M, Dkt. 88-3; Keller Depo. 84:4-6, 84:11-22, Amd. Wheeler Decl., Exh. N, Dkt. 88-3; Lohr Depo. 103:20-22, 113:10-17, Amd. Wheeler Decl., Exh. O, Dkt. 88-3; Oseguera Depo. 55:24-56:1, Amd. Wheeler Decl., Exh. S, Dkt. 88-4; Perry Depo. 106:16-107:5, 114:16-21, 115:24-116:1, Amd. Wheeler Decl., Exh. T, Dkt. 88-5; Predmore Depo. 102:5-9, 54:17-55:5, Amd. Wheeler Decl., Exh. U, Dkt. 88-5; Tomasello Depo. 78:4-12, Amd. Wheeler Decl., Exh. V, Dkt. 88-5; Wilson Depo. 117:18-118:3, Amd. Wheeler Decl., Exh. W, Dkt. 88-5.

[5] Bedard Depo. 77:20-22, Amd. Wheeler Decl., Exh. J, Dkt. 88-2; Diego Depo. 6:8-19, 38:20-39:14, 39:18-20, 148:4-17, 149:2-151:14, Amd. Wheeler Decl., Exh. K, Dkt. 88-2; Lynch Depo. 24:21-23, 30:11-13, Amd. Wheeler Decl., Exh. P, Dkt. 88-3; Mueller Depo. 39:7-9, Amd. Wheeler Decl., Exh. Q, Dkt. 88-3; Oseguera Depo. 68:15-22, 72:6-10, Amd. Wheeler Decl., Exh. S, Dkt. 88-4; Perry Depo. 117:7-16, Amd. Wheeler Decl., Exh. T, Dkt. 88-4; Predmore Depo. 36:2-4, 52:17-23, Amd. Wheeler Decl., Exh. U, Dkt. 88-5.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

was about or why they had to sign the declarations,[6] some were never told they were potential class members in this case,[7] and others were not adequately informed of their rights when signing the declarations.[8]

(c)     Analysis

After considering the evidence presented by each party, the Court DENIES Plaintiff's motions to strike the declarations of Daniel J. Slottje, Philip E. Tetlock, Cheryl Wilson, Elissa Predmore, Harley Thompson, Jolyn Elliott, Lori Hansen, Matthew Wilson, and Salvador Diego. The Court GRANTS Defendant's motion to strike the declaration of Dr. William Bielby, and DENIES Defendant's motions to strike the declarations of Dr. Jon Krosnick and Gina Copes. As stated in the Court's February 6, 2012 Order, the Court DENIES Plaintiff's motions to strike the declarations of Ryan Huskey and Dian Riser, and GRANTS Plaintiff's motion to strike the declaration of Stacy Goopio. Finally, the Court GRANTS Plaintiff's ex parte application to strike the supplemental declarations of Eileen Zorc and Sheryl Skibbe.

In light of the admissible evidence discussed above, the Court finds that Plaintiff has presented sufficient evidence to demonstrate affirmatively that the following common questions are present in this action: (i) whether Defendant had a common and widespread practice of not following its policies regarding overtime; (ii) whether Defendant knew or should have known that claims adjusters were working off-the-clock without compensation; and (iii) whether Allstate managers who were so informed elected to take no corrective steps with respect to adjusters who were working overtime without compensation.

(5)     Defendant's Second Argument: Whether Plaintiff and Declarants Are Representative of the Putative Class

Defendant next contends that the experiences of Plaintiff and seven adjusters who claim to have worked off-the-clock are not representative of other adjusters. Instead, Defendant claims that these seven adjusters had performance problems, were inefficient and are not proper representatives for 1180 claims adjusters who worked in 13 different offices, under different FPLs and MCMs, on

---

[6] Abich Depo. 25:6-11, Amd. Wheeler Decl., Exh. I, Dkt. 88-2; Gehl Depo. 22:3-6, 22:14-17, 23:2-6, 67:14-16, Amd. Wheeler Decl., Exh. M, Dkt. 88-3; Lohr Depo. 14:3-17, 31:14-21, 32:8-19, 45:12-20, 109:22-110:4, Amd. Wheeler Decl., Exh. O, Dkt. 88-3; Oseguera Depo. 18:1-3, 50:15-17, 53:11-15, 54:7-13, 54:24-55:17, 62:6-10, Amd. Wheeler Decl., Exh. S, Dkt. 88-4; Newman Depo. 19:4-8, Amd. Wheeler Decl., Exh. R, Dkt. 88-4; Perry Depo. 93:23-94:7, 100:24-101:5, 101:9-13, 116:21-25, Amd. Wheeler Decl., Exh. T, Dkt. 88-5; Tomasello Depo. 83:1-3, Amd. Wheeler Decl., Exh. V, Dkt. 88-5.

[7] Bedard Depo. 50:17-21, Amd. Wheeler Decl., Exh. J, Dkt. 88-2; Oseguera Depo. 75:16-22, Amd. Wheeler Decl., Exh. S, Dkt. 88-4; Predmore Depo. 34:19-23, 35:2-15, Amd. Wheeler Decl., Exh. U, Dkt. 88-5.

[8] Abich Depo. 165:3-168:8, 169:19-23, 170:10-12, Amd. Wheeler Decl., Exh. I, Dkt. 88-2; Perry Depo. 99:24-100:10, 104:24-105:1, 105:8-11, 117:1-6, Amd. Wheeler Decl., Exh. T, Dkt. 88-5; Predmore Depo. 44:17-24, 45:9-12, Amd. Wheeler Decl., Exh. U, Dkt. 88-5.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

different types of claims, and in different physical settings. Further, Defendant contends that there is no evidence that any adjusters other than Plaintiff and the seven declarants failed accurately to record their time, or that they failed to do so for the same reasons, *i.e.*, the alleged corporate practice of not approving overtime and characterizing overtime as indicative of poor performance.

Plaintiff rebuts this allegation by referring to the deposition testimony of Defendant's declarants, who testified that: (i) they cannot complete their work within an eight-hour day;[9] (ii) they routinely work overtime in order to get their jobs done;[10] (iii) Allstate's timekeeping policies, overtime policies, and meal and rest break policies apply uniformly to all claims adjusters throughout California;[11] (iv) managers "[i]nsist" that overtime be pre-approved unless they are only delayed for a few minutes past the end of their shift on a customer call;[12] (v) they must explain why overtime is needed;[13] and (vi) FPLs will coach and evaluate them if they work too much overtime.[14] Further, declarant Kristi Tomasello, who is a current FPL, testified that overtime is monitored, and that she was instructed by her supervisor to keep the amount of overtime low because her office's overtime budget was "out of pattern with the other offices." Tomasello Depo. 78:18-20, 79:14-80:5, 80:15-19, Amd. Wheeler Decl., Exh. V, Dkt. 88-5. Other FPL declarants were also told to keep their claims adjusters' overtime down. Keller Depo. 100:24-101:3, Amd. Wheeler Decl., Exh. N, Dkt. 88-3; Perry Depo. 64:2-20, 118:9-11, 130:12-15, Amd. Wheeler Decl., Exh. T, Dkt. 88-5.

---

[9] Diego Depo. 29:11-18, 30:5-14, 153:7-9, Amd. Wheeler Decl., Exh. K, Dkt. 88-2; Keller Depo. 44:7-13, Amd. Wheeler Decl., Exh. N, Dkt. 88-3; Newman Depo. 65:14-23, Amd. Wheeler Decl., Exh. R, Dkt. 88-4; Perry Depo. 19:16-20:8, 22:15-23:14, 29:11-15, 43:19-44:3, 45:1-47:10, 64:17-20, 64:24-66:8, 123:13-20, 124:11-16, 125:4-25, 126:9-22, 127:17-25, 131:18-132:2, Amd. Wheeler Decl., Exh. T, Dkt. 88-5; Tomasello Depo. 34:18-23, 43:19-44:13, Amd. Wheeler Decl., Exh. V, Dkt. 88-5; Wilson Depo. 170:1-7, Amd. Wheeler Decl., Exh. W, Dkt. 88-6; Gehl Depo. 122:17-123:5, Amd. Wheeler Decl., Exh. M, Dkt. 88-3.

[10] Abich Depo. 76:5-12, Amd. Wheeler Decl., Exh. I, Dkt. 88-2; Oseguera Depo. 128:6-8, 128:25-129:4, Amd. Wheeler Decl., Exh. T, Dkt. 88-5; Predmore Depo. 58:3-5, Amd. Wheeler Decl., Exh. U, Dkt. 88-5.

[11] Diego Depo. 22:9-12, 62:2-67:15, 77:19-78:2; 139:12-15, 169:5-10, Amd. Wheeler Decl., Exh. K, Dkt. 88-2; Keller Depo. 39:20-24, 53:25-54:11, 103:1-104:21, Amd. Wheeler Decl., Exh. N, Dkt. 88-3; Oseguera Depo. 108:12-24, Amd. Wheeler Decl., Exh. S, Dkt. 88-4; Newman Depo. 75:24-76:13, Amd. Wheeler Decl., Exh. R, Dkt. 88-4; Tomasello Depo. 102:1-8, Amd. Wheeler Decl., Exh. V, Dkt. 88-5; Wilson Depo. 78:2-22, Amd. Wheeler Decl., Exh. W, Dkt. 88-6.

[12] Abich Depo. 84:3-8, Amd. Wheeler Decl., Exh. I, Dkt. 88-2; Diego Depo. 50:15-51:16, 62:2-67:15, 151:21-152:4, 157:18-21, 167:1-168:13, 169:5-10, 169:11-17, 170:1-11, Amd. Wheeler Decl., Exh. K; Gehl Depo. 105:6-8, 125:3-5, 126:9-13, Amd. Wheeler Decl., Exh. M, Dkt. 88-2; Oseguera Depo. 119:15-17, Amd. Wheeler Decl., Exh. S, Dkt. 88-4; Newman Depo. 59:13-23, 95:20-25, 65:24-66:9, Amd. Wheeler Decl., Exh. R; Perry Depo. 61:5-16, 64:12-16, 83:14-17, 127:23-25, 131:6-11, Amd. Wheeler Decl., Exh. T; Tomasello Depo. 45:16-46:1, 47:3-20, 92:9-14, Amd. Wheeler Decl., Exh. V, Dkt. 88-5; Wilson Depo. 161:3-10, 161:17-162:1, 170:13-18, Amd. Wheeler Decl., Exh. W, Dkt. 88-6.

[13] Diego Depo. 62:2-8, 158:1-4, Amd. Wheeler Decl., Exh. K, Dkt. 88-2.

[14] Keller Depo. 50:7-13, Amd. Wheeler Decl., Exh. N, Dkt. 88-3; Wilson Depo. 164:20-24, 167:8-168:9, 170:13-18, 171:23-172:3, Amd. Wheeler Decl., Exh. W, Dkt. 88-6.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

This rebuttal evidence tends to show that the experience of Plaintiff and those whose declarations he presents were not isolated occurrences, and that the alleged practice may be one that is state-wide. The Court need not determine the merits of Plaintiff's theory at the class certification stage; instead, it simply must be satisfied that Plaintiff has met his burden of demonstrating commonality.

Defendant's parallel argument -- that the class is overbroad and lacks commonality because it includes all different types of claims adjusters, including inside and outside adjusters, adjusters in different offices, and adjusters working under different supervisors -- has some merit. However, the competing evidence that has been presented indicates that the alleged practice of discouraging overtime has been applied with equal force to all claims adjusters in California. Perhaps the adjusters who are most different from Plaintiff in terms of day-to-day work are outside adjusters; however, two of Plaintiff's declarants worked as field adjusters, and they nonetheless testify that they felt the same pressure to work unreported overtime as those who worked primarily in offices. Rubinoff Decl. ¶¶ 2, 9-10; Copes Decl. ¶¶ 2, 6-8; Dkt. 67-3. Thus, outside adjusters are sufficiently similarly situated to Plaintiff because they were also subject to the rules regarding pre-approval of overtime, which under the evidence proffered by Plaintiff, was given reluctantly, if at all.

Because all managers were allegedly implementing this state-wide policy, their discretion was limited. *See Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 908-910 (7th Cir. 2012) (finding that a state-wide overtime class was proper, and distinguishing *Dukes* on the basis that only some lesser amount of discretion was at issue, *i.e.*, the discretion associated with the details of enacting a company-wide policy or directive). Thus, the Court is not persuaded that the dispersion of employees across different offices and under the supervision of different managers is sufficient to defeat commonality.

(6)     Defendant's Third Argument: Availability of Statistical Sampling

(a)     Plaintiff's Position and Expert Testimony

Plaintiff relies on *Adoma*, 270 F.R.D. 543, to support his commonality argument through the proposition that the class claims can be adjudicated through statistical sampling and representative testimony. In *Adoma*, the district court certified an "off-the-clock" class of university enrollment counselors. The class member counselors in *Adoma* used an Avaya telephone system that recorded the counselors' login and logout times, as well as times the employees were away from their desks for breaks and lunches. *Id.* at 548-49. The court certified the class, noting that the Avaya telephone records, while not perfect reflections of time actually worked, gave rise to the common question of "whether the Avaya system gave defendants at least constructive knowledge of the employee overtime…." *Id.* at 551. However, in determining that this class was appropriate for certification, the court relied extensively on *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996), which permitted a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

representative inquiry and statistical sampling to determine class members' actual time worked. The Ninth Circuit affirmed the continuing validity of *Hilao* in *Dukes v. Wal-Mart*, 603 F.3d 571, 625-27 (9th Cir. 2010), a decision that was later reversed by the Supreme Court. This raises questions as to the continuing force of *Hilao* as well as the significance of this aspect of *Adoma*.

Plaintiff also presents expert testimony to support his statistical approach. Dr. Jon Krosnick ("Krosnick"), a professor at Stanford University and an expert in statistics and sociology, has provided testimony about the propriety of survey research methods, including how best to measure behavior and opinions through surveys and the analysis of survey data. Krosnick offers expert opinions about the feasibility of making class-wide determinations of liability and damages by using statistical sampling and class member survey data derived from random sampling. Krosnick also testifies about the specific nature of the questions that could be posed to a representative sample of the class members, including: (i) whether, how often, and for how much time per day and per week the putative class members performed off-the-clock work in excess of eight hours per day or 40 hours per week; (ii) what experiences the putative class members had at work that contributed to their performing work off the clock; and (iii) questions to be used to assess survey accuracy. Krosnick Decl. ¶ 52, Dkt. 67-4.

Plaintiff's second expert, Dr. William T. Bielby ("Bielby"), testifies that Allstate policies and practices resulted in significant pressure on the claims adjusters to work unreported overtime, and that Allstate knew, or should have known, about the claims adjusters' unreported work. Bielby Decl. ¶¶ 15-16, Dkt. 67-4. Bielby is an expert in the areas of organizational behavior and social science research methods. He draws from his expertise in these fields to conclude that three types of social science are relevant to the issues in this case: (i) organizational inertia, meaning that after the reclassification, such inertia may have led to the carry-over of prior policies; (ii) autonomy and organizational commitment, referring to Allstate's refusal to allow claims adjusters to report their own overtime and failure to enact contemporaneous timekeeping measures; and (iii) loose coupling between stated policies, on the one hand, and real-life practices, on the other. *Id.* ¶¶ 17-31.[15]

---

[15] Defendant argues that this testimony should be disregarded in light of Bielby's deposition testimony, in which he admits that he has taken no steps to determine empirically whether any feature of any policy or procedure at Allstate did, in fact, contribute to any particular individual not accurately reporting his or her time. Bielby Depo. 15:21-17:11, 137:3-138:14, Paley Decl., Exh. B, Dkt. 83-1. Indeed, similar testimony by Bielby was rejected by the Supreme Court in *Dukes*, with the Court noting that "we can safely disregard what he has to say" because "Bielby's testimony does nothing to advance [plaintiff's] case." 131 S. Ct. at 2553-54. Similarly, here, the Court finds Bielby's testimony is not sufficiently relevant to the class certification inquiry. Accordingly, the Court GRANTS Defendant's motion to strike Bielby's declaration.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

(b)      Defendant's Opposition to this Approach

Defendant contends that Plaintiff cannot rely on statistical sampling to create commonality where there is none. In support of this position, Defendant relies on *Dukes,* where the Court stated:

> The Court of Appeals believed that it was possible to replace such proceedings with Trial by Formula. A sample set of the class members would be selected, as to whom liability for sex discrimination and the backpay owing as a result would be determined in depositions supervised by a master. The percentage of claims determined to be valid would then be applied to the entire remaining class, and the number of (presumptively) valid claims thus derived would be multiplied by the average backpay award in the sample set to arrive at the entire class recovery—without further individualized proceedings. 603 F.3d, at 625–627. We disapprove that novel project.

131 S. Ct. at 2561.

(c)      Plaintiff's Reply

Plaintiff responds through a more narrow interpretation of *Dukes.* Thus, Plaintiff contends that *Dukes* should be read to limit the use of statistical methods only when such methods would deprive the defendant of the right to litigate its individualized defenses. *See id.*; 5-23 MOORE'S FED. PRAC. – CIVIL § 23.46 ("[A] mathematical formula or statistical technique may not be used to compute damages if this would deprive the defendant of the right to litigate its defenses to individual claims."). Indeed, in *Mahoney,* the factually similar collective action discussed above, the court addressed the issue whether the insurance company could present its individual defenses in conjunction with representative testimony, and concluded as follows:

> [Defendant] argues that decertification is necessary because of the highly individualized nature of its defenses, which include each plaintiff's knowledge of [defendant's] policies, whether each plaintiff was paid for overtime work, whether plaintiffs' off-the-clock activities were compensable work, whether some of the off-the-clock work was de minimis, whether [defendant] had actual or constructive knowledge of any off-the-clock work performed by the plaintiffs, whether [defendant] acted in good faith, and whether the plaintiffs' claims are time-barred. However, the Court agrees with [plaintiff] that, based on the current record, these defenses can be adequately raised at a trial involving representative testimony. Courts have allowed the use of representative testimony in cases involving allegations of unpaid overtime. *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *Schultz v. Capital Intern. Sec., Inc.* 466 F.3d 298, 310 (4th Cir.2006); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88 (2d Cir.2003) ("[N]ot all employees need testify in order to prove FLSA violations or recoup back-wages"); *Reich v. Gateway Press*, 13 F.3d 685, 701–02 (3d Cir.1994) ("Courts commonly allow representative employees to prove

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

violations with respect to all employees."); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir.1973) (allowing representative testimony in a case involving unpaid overtime); *Thiebes v. Wal–Mart Store, Inc.*, 2004 U.S. Dist. LEXIS 15263, *1, 2004 WL 1688544 (D.Or. July 26, 2004); *National Electro–Coatings, Inc. v. Brock*, No. C86–2188, 1988 U.S. Dist. LEXIS 16937, *8, 1988 WL 125784 (N.D.Ohio July 13, 1988) ("Courts have consistently allowed, or even required, a small number of employees to testify to establish a pattern of violations for a larger number of workers."). The Court similarly finds that Defendants [sic] will be allowed to raise all of its asserted defenses by examining representative plaintiffs and presenting its own evidence at trial.

*Mahoney*, 2011 WL 4458513, at *9. Here, Plaintiff seeks to rely on a similar approach. Thus, Plaintiff contends that back pay may be awarded to non-testifying claimants on the basis of evidence adduced from a fairly representational subset, as derived from the proof standard set forth in *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687-88 (1946), which allows proof of overtime hours "as a matter of just and reasonable inference," a standard which may be met in the context of a group action by establishing a "pattern or practice" of overtime work by class members.

The Court reserves the issue whether damages can be calculated based on statistical sampling or some other related method. Similar damage calculations were disapproved by the Supreme Court as "Trial by Formula," and were not permitted in *Mahoney*. Instead, in *Mahoney*, the court explicitly approved representational testimony only with respect to the liability phase of the trial, and indicated its intent to bifurcate the damages phase:

Furthermore, the Court believes that [defendant's] concern over the extent to which each plaintiff may have been paid for overtime hours can be resolved through bifurcation of the trial into a liability stage and a damages stage. *See Thiebes v. Wal–Mart Store, Inc.*, No. Civ. 98–802–KI, 2004 U.S. Dist. LEXIS 15263, at *1, 2004 WL 1688544 (D.Or. July 26, 2004) (noting that the court had bifurcated collective action involving allegations of unpaid overtime and off-the-clock work into separate liability and damages trials). The liability stage will focus on the class-wide question of whether [defendant] knew or should have known that [claims adjusters] were working off-the-clock to comply with their supervisors formal and informal instructions to work overtime hours without requesting overtime payment. If liability is proven, the amount of off-the-clock hours, the amount each plaintiff may have been paid for overtime work, and the extent to which off-the-clock work can be attributed to reasons other than [defendant's] policies can be evaluated at damages phase of trial.

2011 WL 4458513, at *10. Thus, in light of *Dukes*, Plaintiff has not met his burden of affirmatively demonstrating that statistical sampling is a proper method of calculating individual damages. Nonetheless, this shortcoming is not sufficient to preclude class certification with respect to liability. *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("In this circuit, however, damage calculations alone cannot defeat certification."); *Morton v. Valley Farm Transp., Inc.*, No. C 06-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|----------|--------------------------|------|----------------|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

2933 SI, 2007 U.S. Dist. LEXIS 31755, *16 (N.D. Cal. Apr. 13, 2007) (certification granted for overtime, meal and rest claims despite need for individualized damage inquiries); NEWBERG ON CLASS ACTIONS § 4:26, p. 220 (4th ed. 2003) ("In most cases, the amount of damages suffered is an individual matter, but the Advisory Committee Notes state that such needed individual proof of damages will not preclude a finding of predominance.").

      c)     Breaks and Rest Periods

      Under California Labor Code § 226.7, if an employer fails to provide a compliant meal or rest period, the employer is required to pay an additional hour of pay to the employee at that employee's regular rate of pay for each day for which a required meal or rest period was not provided. Although Plaintiff has met his burden of affirmatively demonstrating commonality for his proposed unpaid overtime class, he has not done so with respect to the uncompensated meal and rest period claims. Thus, Plaintiff has not identified any common policy or practice that interfered with adjusters' ability to take breaks other than his generic allegations that adjusters were overworked and did not have time for such breaks. These allegations are not sufficient to demonstrate affirmatively that common questions exist or will predominate. Instead, the success of Plaintiff's claims will depend on individualized questions, such as whether a particular adjuster took the legally mandated breaks, and if breaks were missed, why the adjuster failed to take them. Further, Gilbert testified that Allstate does not coordinate breaks or take measures to ensure that breaks are staggered; instead, employees in each unit coordinate among themselves. Gilbert Depo. 44:10-19, Paley Decl., Exh. G, Dkt. 83-2. Plaintiff does not appear to dispute this testimony. Thus, in the absence of a common practice or policy or some other "glue" to bind this class, commonality cannot be shown. *Compare Brinker*, 2012 WL 1216356, at *12-13 (finding that certification of a rest period claim was appropriate because the employer had a common policy governing the availability of rest periods).

      d)     Untimely Payment of Wages upon Termination and Unfair Business Practices

      Plaintiff's California Labor Code § 203 claim is derivative of his overtime and missed meal and rest period claims. Similarly, Plaintiff's California Business and Professions Code § 17200 claim is derivative of his underlying claims. Thus, the determination whether these claims should be certified for class treatment depends on, and is governed by, the Court's determinations with respect to each of these underlying claims.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

    3.    <u>Typicality</u>

        a)    Legal Standard

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon*, 976 F.2d at 508. "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).

        a)    The Parties' Arguments

Defendant contends that Plaintiff's claims are not typical of the claims of the class because Plaintiff asserted that he was "singled-out" and subjected to different terms and conditions of employment. Jimenez Depo. 140:8-142:4, Paley Decl., Exh. L, Dkt. 83-2. Plaintiff also stated that he had more work than other adjusters because he was the only Represented MIST adjuster. Among other things, he claims that he had a higher claims volume. *Id.* at 158:24-160:11; Jimenez Workers' Comp. Depo. 31:4-32:25, Paley Decl., Exh. M, Dkt. 83-2. Plaintiff further testified that he had difficulty learning to use NextGen because of his age, and that he felt that his FPL, Cohn, was holding him to a higher standard than Cohn applied to other adjusters. Jimenez Workers Comp. Depo. 49:23-51:21, 140:25-141:25, Paley Decl., Exh. M, Dkt. 83-2. Thus, Defendant contends that this testimony demonstrates that Plaintiff's situation was unique, and that Plaintiff worked off the clock and missed breaks to appear more efficient in light of these personal factors, which are inapplicable to other potential class members.

Plaintiff responds that Rule 23(a)(3) requires only that the plaintiff's claims be "reasonably related" to those of absent class members, citing *Rodriguez*, 591 F.3d at 1124. Plaintiff emphasizes that he and the putative class members all seek to advance claims for unpaid overtime and missed meal and rest periods. Further, Plaintiff, like most putative class members, was a claims adjuster during the class period when, in 2005, his job was reclassified from exempt to non-exempt. Any specific details are irrelevant because typicality refers to the nature of the claims, not the specific facts from which they arose.

        b)    Plaintiff's Claims Are Sufficiently Typical

Plaintiff has adequately demonstrated that his claims are typical of those of the putative class. Plaintiff is correct that "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon*, 976 F.2d at 508. Thus, here, the nature of Plaintiff's claims and those of the class are sufficiently related. The fact that Plaintiff may have been in a slightly different situation in light of his long career at Allstate and the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

type of insurance claims he adjusted does not make his claims atypical. Accordingly, Plaintiff has met his burden of demonstrating that his claims are typical of the claims of the putative class.

### 4.    Adequacy of Representation

The requirement of adequacy contained in Rule 23(a)(4) ensures that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement is needed to protect the due process rights of all of the class members; in a class proceeding, all class members will be bound by the final judgment. *See Richards v. Jefferson County*, 517 U.S. 793 (1996). The determination of adequacy hinges on whether the named plaintiffs and their counsel have any conflicts of interest with other class members and whether they will prosecute the action vigorously. *Hanlon*, 150 F.3d at 1020.

Plaintiff asserts that there are no unique circumstances involving his employment as an Allstate claims adjuster that would unduly limit his ability to represent the proposed class fairly and adequately. Defendant does not dispute this assertion, nor does it identify any potential conflicts between Plaintiff and proposed class members. Thus, the Court finds that Plaintiff is an adequate representative of the proposed class. Plaintiff's counsel at the R. Rex Parris Law Firm also contend that they are adequate because of their experience litigating wage-and-hour class actions. *See* Parris Decl., Dkt. 67-1. Defendant again does not oppose this contention. Thus, because the Court has no reason to question the representations of Plaintiff's counsel or their commitment to pursue this action vigorously, and has no reason to believe that such counsel have any conflicts with putative class members, the Court finds that Plaintiff's counsel is adequate.

### D.    Rule 23(b)(3) Requirements

If the Rule 23(a) prerequisites are satisfied, a court next considers whether the proposed class can be maintained under at least one of the subparts of Rule 23(b). *See, e.g.*, *Valentino*, 97 F.3d at 1234. Here, Plaintiffs seek certification under Rule 23(b)(3), which has two requirements: (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### 1.    Predominance of Common Questions

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Determining whether common questions predominate requires the court to weigh the common questions in the case against the individualized questions, a more in-depth inquiry than the Rule 23(a)(2) question of whether common questions are at issue in the case. "It is clear that

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).

The core of the predominance analysis is addressed in the foregoing discussion concerning commonality. In addition to the issues discussed above, Defendant contends that common questions do not predominate because: (1) overtime claims generally are not suitable for class treatment due to myriad inherent, individualized questions; and (2) Defendant's affirmative defenses are such that common questions cannot predominate.

a)      Inherent Common Questions: Overtime Claims Generally

Defendant asserts courts repeatedly deny class certification of claims for unpaid overtime and off-the-clock work because they necessarily require individualized inquiries. Defendant contends that claims for unpaid overtime are necessarily individualized where, as here, there is no corporate policy requiring "off-the-clock" work. Thus, because Plaintiff's theory allegedly rests on discrete decisions by individual actors, rather than an overarching policy, Defendant contends that this precludes a finding that common issues of law or fact predominate.

In support of this argument, Defendant relies on the statements of its declarants, who testify that: (1) they were not required to complete any set amount of work in eight hours; (2) they did not feel pressure to work unreported overtime; (3) overtime requests were routinely approved, or alternative means were suggested to complete the work; (4) even when not approved in advance, all reported overtime was paid; and (5) they were never disciplined for requesting or working overtime.[16]

Defendant also relies on relevant case law, including *Koike v. Starbucks Corp.*, 378 Fed. App'x 659, 661 (9th Cir. 2010). In *Koike*, the Ninth Circuit held that:

[t]he district court's denial of the motion for class certification was proper. Even giving full credence to the evidence presented by [plaintiff], this evidence tends to show only that business pressures exist which might lead assistant managers to work off-the-clock. The district court did not abuse its discretion in finding that individualized factual determinations are required to determine whether class members did in fact engage in off-the-clock work and whether [defendant] had actual or constructive knowledge of off-the-clock work performed.

---

[16] *See* Goopio Decl. ¶¶ 7-9, 11; Lynch Decl. ¶¶ 8-9; Schlosser Decl. ¶¶ 4-6, 8; Buehlmaier Decl. ¶¶ 5, 6, 9; Mueller Decl. ¶¶ 5-6; Keller Decl. ¶¶ 6-7, 10-14, 16-17; Oseguera Decl. ¶¶ 5, 7-8, 12-14; Perry Decl. ¶¶ 4-5, 9-11; Newman Decl. ¶¶ 12-13; Lohr Decl. ¶¶ 4, 6, 8-10; Abich Decl. ¶ 9; Bedard Decl. ¶¶ 4, 6; Dkt. 84.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

[Intervenor] argues that the district court abused its discretion by improperly assessing the merits of [plaintiff's] claims. However, a "district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n. 15 (9th Cir.2009). The district court's analysis clearly related to the issue of predominance under Rule 23(b)(3), and was not an improper assessment of the merits.

378 Fed. App'x at 661.

The district court in *Koike* found that the putative class representative had hidden his off-the-clock work from other employees and management, and had intentionally and consistently conducted such work in secret, despite having the ability to record his own time. *See Koike v. Starbucks Corp.*, No. C 06-3215 VRW, 2008 WL 7796650, *2-4. (N.D. Cal. June 20, 2008). Here, although there is some evidence that a portion of class members' off-the-clock work may have been done without disclosure to those who supervised the claims adjusters, there is also testimony that managers regularly saw employees work in excess of eight hours in a day and 40 hours per week without taking any action. Indeed, there is evidence in this case that the managers knew whether those employees were being compensated for such overtime because all overtime requests had to be submitted through upper-level management.

Defendant is correct that overtime claims may present a number of individualized questions, including whether individual employees worked off-the-clock. *See Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 642 (N.D. Cal. 2010) ("Plaintiff has provided no evidence of any company-wide or class-wide policy of requiring 'off-the-clock' work, and the individualized assessment necessary to ascertain whether there were in fact any employees who were told to work 'off-the-clock' would not be susceptible to common proof."); *Reed v. County of Orange*, 266 F.R.D. 446, 453 (C.D. Cal. 2010) ("These sorts of variations convince the Court that determining whether and when Plaintiffs worked off-the-clock with respect to pre-shift activities will be an inherently individualized inquiry."). Nonetheless, courts have certified classes and allowed collective actions to proceed notwithstanding such circumstances. Generally, the more narrowly defined the class, and the more evidence of a controlling company-wide policy, the more likely it is that the class will be permitted to proceed. *Compare Washington*, 271 F.R.D. 629 (deciding that common questions did not predominate in a class composed of different types of employees with different job functions when there was no evidence of a company-wide policy that interfered with overtime reporting); *Brinker*, 2012 WL 1216356, at *26 (noting that, for the employee's off-the-clock claim, "neither a common policy nor a common method of proof is apparent" because there was not "substantial evidence of a systematic company policy to pressure or require employees to work off the clock"); *and Koike*, 2008 WL 7796650 (see above) *with Mahoney*, 2011 WL 4458513 (declining to decertify a collective action very analogous to the one here where adjusters claimed that overtime reporting procedures and corporate "frowning on" overtime caused off-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|----------|--------------------------|------|----------------|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

the-clock work) *and Ugas v. H & R Block Enters., LLC*, No. CV 09-6510-CAS (SHx), 2011 WL 3439219, *9 (C.D. Cal. Aug. 4, 2011) ("[P]laintiffs have offered sufficient evidence that they may be able to show that defendants pursue an unwritten policy to improperly withhold overtime wages from class members in this district.").

Here, Plaintiffs allege a company-wide policy of discouraging and limiting overtime. *See Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 908-10 (7th Cir. 2012) (finding that a state-wide overtime class was proper in light of the alleged common policy of denying employees earned overtime compensation by instructing them not to record such time). In *Ross*, the Seventh Circuit distinguished *Dukes*, noting that "there are significant distinctions," and explaining that "the most important distinction is the size of the class and the type of proof the *Dukes* plaintiffs were required to offer." *Id.* With respect to class size, the court noted that the proposed class included only 1129 employees, almost the exact number at issue here. With respect to the type of proof, the court observed that, although individual issues would be present, the type of proof necessary in *Dukes* concerning how individual managers exercised their discretion was not necessary to Plaintiff's claims; instead, only some lesser amount of discretion was at issue, *i.e.*, the discretion associated with the details of enacting a company-wide policy or directive. *Id.* Thus, there was "glue holding together" the proposed class: "the common question of whether an unlawful overtime policy prevented employees from collecting lawfully earned overtime compensation." *Id.* at 910. Plaintiff's claims in this action are similar to those advanced by the plaintiffs in *Ross*. Thus Plaintiff's overtime claim is based on a common state-wide "policy to violate the policy." For this reason, Plaintiff has demonstrated that there are significant common questions at issue and that they will predominate over any individualized inquiries.

      b)      Defendant's Affirmative Defenses

Defendant identifies two affirmative defenses and argues that each precludes class certification: (1) it did not have constructive or actual knowledge that Plaintiff and other class members were working off-the-clock; and (2) the amount of unpaid overtime is *de minimis*. With respect to Defendant's *de minimis* defense, it can be addressed through representative testimony, as discussed above and noted in *Mahoney*, 2011 WL 4458513. With respect to whether Defendant had actual or constructive knowledge of the unpaid overtime, the standard of constructive knowledge is amenable to class treatment. Thus, Plaintiff need not demonstrate that every manager knew every time an employee worked off-the-clock; instead, Plaintiff can demonstrate that Defendant should have known that its employees were regularly working off-the-clock as a result of its policies regarding the reporting of overtime, the recording of time worked by claims adjusters, its insistence on having its supervisory personnel monitor all requests for overtime, and the position of certain of its managerial personnel about the need to limit overtime for budgetary or other performance-related reasons. Further, as discussed above, Defendant will have an opportunity to raise these defenses with the representative witnesses. In sum, when compared to the manner of proof as to common questions, these defenses do

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

not raise sufficiently individualized questions that either preclude certification or make a class process unfair.

> 2. <u>Superiority of Class Action</u>

In evaluating whether a class action is the superior mechanism for handling a case, a court must consider: (1) the interest of class members in individually controlling prosecution of separate actions; (2) the extent and nature of any pending litigation concerning the controversy; (3) the desirability of litigating the claims in the particular forum where the class action is filed; and (4) difficulties likely to be encountered in managing the class action. FED. R. CIV. P. 23(b)(3). A class action is superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234.

Here, Plaintiff argues that this proposed class is manageable based largely on the testimony of his expert witnesses. Thus, each testifies that there are common issues pertaining to Defendant's policy and practice, and that statistical sampling can be used to prove both liability and damages. Plaintiff's experts, and the issues raised by the use of statistical sampling, are discussed above and are not persuasive to the Court for the reasons stated. Plaintiff also contends that he proposes an efficient and manageable class-wide trial plan because he proposes a single trial with a single judgment. This proposed trial would determine both liability and the total amount of money damages owed to the putative class members. The proposed process is as follows: Krosnick will determine the number of class members necessary for a statistically valid and robust damages model, Krosnick will provide evidentiary foundation for the number of class members randomly selected, the parties will depose a random sample of class members, and a select group of these persons will be trial witnesses. However, the viability of this approach again depends on the propriety of using statistical sampling to calculate damages.

As discussed above, the Court finds that the issues of liability are properly subject to class treatment, but has not yet determined how the damages phase of a trial might proceed. Thus, the Court has not been convinced at this time about the propriety of the use of statistical sampling to calculate damages. However, that is an issue that can be addressed in the future, and is not a sufficient basis to find a lack of superiority at the class certification stage. "The 'risk [that individual damage calculations will be unmanageable] is better addressed down the road, if necessary' by altering or amending the class, not by denying certification at the outset." 2 NEWBERG ON CLASS ACTIONS § 4:26 (4th ed.) (quoting *In re Bally Mfg. Sec. Corp. Litig.*, 141 F.R.D. 262, 268 (N.D. Ill. 1992), *order clarified*, 144 F.R.D. 78 (N.D. Ill. 1992), aff'd, 2 F.3d 1456 (7th Cir. 1993)). Moreover, when compared to the prospect of separately trying approximately 1200 individual cases as to both liability and damages, the class

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|----------|--------------------------|------|----------------|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

process envisioned would be superior based on the present facts and circumstances.[17] The parties do not dispute that the other factors for evaluating superiority are met here: there is no indication that class members have a strong interest in individually controlling separate actions, and the desirability of litigating in this forum is not contested. However, although Defendant does not contend that "the extent and nature of any pending litigation concerning the controversy" undermines the propriety of class certification, Defendant does contend that Plaintiff cannot represent certain classes currently involved in a pending state court action.

An earlier-filed action, *Williams v. Allstate Insurance Co.*, Case No. BC 382577, is currently pending in the Los Angeles Superior Court. There, the plaintiff sought certification on behalf of auto field adjusters for all of the claims alleged here. After two hearings on July 20, 2010 and September 22, 2010, the Superior Court denied the plaintiff's motion for class certification as to claims for meal and rest period violations and for waiting time penalties. With regard to the plaintiff's off-the-clock claims, the court granted certification, but only for a limited range of violations involving certain specified tasks allegedly performed by the field adjusters prior to the start of their first assignment of the day. Paley Decl. ¶ 30, Exh. CC, Dkt. 83, 83-4. Defendant contends that the Superior Court's denial of certification should be given collateral estoppel effect here. Thus, according to Defendant, such estoppel bars Plaintiff's attempt to "re-certify" these claims on behalf of auto field adjusters in this action. The Superior Court certified a wage statement claim in *Williams* on behalf of all California employees. Notice was provided and Plaintiff Jimenez did not opt out. Thus, because he is currently a class member in *Williams*, Defendant contends that Plaintiff's attempt to bring that claim in this action is improper claim-splitting and must be denied. *See, e.g.*, *Adams v. Cal. Dep't of Health Svcs.*, 487 F.3d 684, 692 (9th Cir. 2007).

Plaintiff does not dispute these assertions. Plaintiff contends, however, that this Court may craft a certification order that excludes any members of the *Williams* class. Thus, Plaintiff consents to the exclusion of the members of the *Williams* class, and suggests that the class here be defined in a manner that would avoid any overlap. For these reasons, the Court redefines Plaintiff's proposed class to exclude all auto field adjusters, and the Court denies Plaintiff's motion to the extent that it seeks to certify a wage statement claim.[18]

---

[17] This issue will continue to be considered by the Court as this matter proceeds and more information is developed through discovery. The Court reserves a final determination of the process through which damage calculations might be demonstrated, including a possible future determination, based on the record that is later developed, that the class should be decertified.

[18] The *Williams* action remains pending in the Superior Court. Consequently, developments in that action may provide a basis upon which this Court could determine whether to modify the class definitions here or to take other steps appropriate to the management of this action as a proceeding that is parallel to *Williams.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

## IV.   CONCLUSION

Plaintiff has met his burden of alleging a company-wide policy or practice that results in the nonpayment of earned overtime compensation by presenting evidence that supports his contentions that there is: (1) a company-wide practice of discouraging and "managing" overtime; (2) imputed knowledge on Defendant's part of the necessity of such overtime in light of heavy workloads, which did not change after the reclassification of claims adjusters from exempt to non-exempt; and (3) a company-wide practice of permitting only managers, not putative class members, to record employee time, which contributes to under-reporting of overtime worked. The Court certifies the proposed class, as limited above, with respect to Plaintiff's first claim for unpaid overtime on the question of liability. Specifically, the Court certifies the following class: "All current and former California-based 'Claims Adjusters,' excluding Auto Field Adjusters, who work(ed) for Allstate Insurance Company within the State of California at any time during the period from September 29, 2006 to final judgment, and who, as a result of Allstate's compensation policies, were not paid overtime compensation for all hours worked in excess of eight hours per day or 40 hours per week." The Court tentatively finds that it will allow the use representational testimony for the liability phase of the class trial, and will bifurcate the damages phase.

Because the Court certifies a class for Plaintiff's first cause of action for off-the-clock work, the Court also certifies that same class for Plaintiff's derivative causes of action: (1) Plaintiff's fourth cause of action for violation of California Labor Code §§ 201 and 202 (wages not timely paid upon termination); and (2) Plaintiff's sixth cause of action for violation of California Business and Professions Code § 17200, *et seq.*

Plaintiff has not met his burden of demonstrating commonality with respect to the proposed meal and rest period class. Plaintiff has not alleged any overarching policy that interfered with putative class members' ability to take the legally mandated meal and rest periods. Thus, Plaintiff's motion is DENIED with respect to his second and third causes of action for violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums) and violation of California Labor Code § 226.7 (unpaid rest period premiums), respectively. Consequently, Plaintiff's motion is DENIED with respect to his derivative causes of action to the extent that they rely on these violations as the underlying offense.

Plaintiff's fifth cause of action for violation of California Labor Code § 226(a) (non-compliant wage statements) is dismissed because Plaintiff is a member of a class in the *Williams* case. The same claim is already being advanced in that action.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08486 JAK (FFMx) | Date | April 18, 2012 |
|---|---|---|---|
| Title | Jack Jimenez v. Allstate Insurance Company, et al. | | |

     A Trial Setting Conference is set for April 30, 2012 at 1:30 p.m. Counsel shall submit a joint report no later than April 24, 2012 which shall address the parties' collective and/or respective positions as to the timing of the final pretrial conference and trial date.

**IT IS SO ORDERED.**

Initials of Preparer    ak

         :